**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **AETNA LIFE INSURANCE COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:15-CV-491** |
| | § | |
| **ROBERT A. BEHAR, M.D., NORTH** | § | |
| **CYPRESS MEDICAL CENTER** | § | |
| **OPERATING COMPANY, LTD. and** | § | |
| **NORTH CYPRESS MEDICAL CENTER** | § | |
| **OPERATING COMPANY GP, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

**JOINT STATUS REPORT**

Plaintiff Aetna Life Insurance Company ("Plaintiff") and Defendants Robert A. Behar,

M.D. ("Dr. Behar") and North Cypress Medical Center Operating Company, Ltd. and North

Cypress Medical Center Operating Company GP, LLC ("North Cypress") (collectively,

"Defendants" or "North Cypress") file this Joint Status Report in accordance with the Court's

Order, dated September 4, 2019 (ECF 283):

    A.    **Discovery to Date**

        1.    **Depositions**

            *Plaintiff's Position*

No depositions have been taken.

            *Defendants' Position*

In the Court's Order dated July 24, 2015, the Court stayed discovery with
the exception of "paper discovery" until January 15, 2016.  The parties
engaged in paper discovery with the Magistrate Judge overseeing same
pursuant to this Court's Order dated September 16, 2015.  (Dkt. 42)  On
October 2, 2015, the Court also referred all Motions to the Magistrate Judge.
(Dkt. 67)  Thereafter, the case was stayed pending Judge Hoyt's decision in

*Aetna I* and then again stayed pending the Fifth Circuit's ruling in *Aetna I*. Thereafter, NORTH CYPRESS moved again to dismiss Aetna's claims based upon the Fifth Circuit's Opinion affirming Judge Hoyt's decisions and rulings in *Aetna I*.  Therefore, no depositions have been taken.

2. **Written Discovery**

    a.    *Joint Discovery/Case Management Plan*, dated April 30, 2015.

    b.    *Plaintiff's Rule 26(a)(1) Disclosures*, dated May 15, 2015.

    c.    *Defendants' Disclosures Pursuant to Rule 26(f)*, dated May 15, 2015.

    d.    *Plaintiff's First Requests for Production to Defendant*, dated May 29, 2015 seeking documents related to the medical claims at issue, medical records, physician referrals, communications with patients, payor and patient complaints, communications with and investigations by government entities, internal and external emails relating to matters at issue in this litigation, including emails sent by/to Dr. Behar and other relevant individuals, North Cypress's billing, charge records and rates, pricing data, policies and guidelines, costs, billing and collection from Aetna members (including "prompt pay" discounts), distributions to North Cypress physicians who provide medical services at North Cypress, organizational and ownership records, accounts receivable records, investor communications documents referenced in other litigation, and deposition transcripts and affidavits from certain individuals related to matters at issue in this litigation.

        i.    *Defendants' Objections and Responses to Plaintiff's First Requests for Production* dated June 26, 2015 objecting that the Requests are overbroad, many are not in existence, irrelevant, attorney work product privilege and that the documents were previously produced in *Aetna I*.

        ii.    *Defendants' Amended Responses and Objections to Plaintiff Aetna Life Insurance Company's Requests for Production*, dated August 12, 2015.

    e.    *Defendant North Cypress Medical Center Operating Company, Ltd.'s First Requests for Production of Documents to Plaintiff*, dated July 27, 2015, requesting all notes, records, memoranda and emails to and from Mark Bertolini, Jeff Emerson, Ed Neugebauer and Clarence Carlton King pertaining to all matters at issue in the case; specific requests for documents supporting each allegation made in

2

Aetna's Complaint; all information with regard to the patients Aetna has placed at issue from January, 2007 through the present; all plans, manuals, administrative services only agreements and other agreements pertaining to the claims made by Aetna; all calculations of claims and documents and correspondence of the claims from 2007 through the present; all documents from MultiPlan, Global Claims Services and the Aetna SIU with regard to all the claims at issue; copies of all attorney fee invoices; all the "Savings" earned by Aetna from claims paid to North Cypress from 2007 to the present; all compliance manuals for medical healthcare claims; all the calculations of Aetna's alleged damages; all methodologies for out-of-network reimbursements approved by the Texas Department of Insurance; all notifications to employees and employers; premium increases and decreases within the area at issue; Medicare Fee Schedules; Plan's Fee Schedules; all PPO, POS and HMO plans; Traditional Agreements between Aetna and healthcare providers within a radius of 30 miles from North Cypress; manuals, guidelines and procedures governing the SIU Department; investigations and programs with regard to North Cypress; Global Claims "Golds;" Evidence-Based Clinical Guidelines; financial statements; Milliman Care Guidelines; Aetna's "talking points;" all documents among Ralph Carpenter, Mary Ellen Keifer, Beverly K. Urschel, Mary A. Hall, Sandra P. Miller and other SIU employees; SIU Guidelines; spreadsheets of analyses of claims; Aetna's databases; Aetna's quarterly reports and other financial reports; deposition transcripts of Beverly K. Urschel, Mary A. Hall, Sandra P. Miller, Mary Ellen Keifer, Ralph J. Carpenter, Joy Maldonado, Mark Bertolini, Jeff Emerson, Ed Neugebauer, Clarence Carlton King; and, all investigative materials pertaining to any U.S. Department of Justice investigations of Aetna.

      i.     *Plaintiff's Objections and Responses to Defendant's First Request for Production* dated August 26, 2015.

f.     *Plaintiff's Notice of Subpoena Duces Tecum to Non-Party Surgical Development Partners, LLC* dated August 10, 2015.

g.     *Defendant North Cypress Medical Center Operating Company, Ltd.'s Second Requests for Production to Plaintiff*, dated August 14, 2015, requesting all documents with regard to Aetna's "Initiative" to exclude coverage for services provided at North Cypress Medical Center; third party studies comparing billed charges of North Cypress versus other hospitals; all Administrative Service Agreements and Master Service Agreements with regard to all plans at issue; all employment agreements between Aetna and Marc T. Bertolini, Jeff D. Emerson, Edward Neugebauer, Clarence Carlton

011168.0208758 HOU 3959725v1

King; compensation plans for Mark T. Bertolini, Jeff D. Emerson, Edward Neugebauer and Clarence Carlton King; documents pertaining to the "Savings Provisions" contained in the ASAs and the Master Service Agreements; Aetna's Bylaws; Aetna's business plans regarding "Savings Provisions;" Aetna marketing materials concerning the "Savings Provisions;" documents regarding eliminating North Cypress' competitors; all documents pertaining to "ghost-written" letters by Aetna to federal, Texas or local authorities pertaining to North Cypress; and, documents and communications with public office holders regarding North Cypress.

      *i.*     *Plaintiff's Objections and Responses to Defendant's Second Request for Production* dated September 14, 2015.

h.     *Defendants' Notice of Subpoena Duces Tecum and Intention to Take Deposition by Written Questions to Non-Party ConocoPhillips Company and Non-Party Harris County* dated August 14, 2015, requesting production of 40 categories of documents related to the ConocoPhillips and Harris County health plans, their agreements and relationship with Aetna and North Cypress.

      i.     *Non-Party Harris County's Objections and Motion for Protection to Defendants' Notice of Intention to Take Deposition on Written Questions* dated September 1, 2015.

      ii.     *<u>Non-Party</u> ConocoPhillips Company and ConocoPhillips Medical and Dental <u>Assistance</u> Plan's Objections to Subpoena Duces Tecum and Notice of Intention to Take Deposition by Written Questions* dated September 2, 2015.

i.     *Defendants' Amended Disclosures Pursuant to Rule 26(f) Federal Rules of Civil Procedure* dated August 26, 2015.

j.     *Defendants' document production* dated September 2, 2015 (Bates stamped NORTH CYPRESSRAB0000001 – NORTH CYPRESSRAB0351515).

k.     *Plaintiff's document production* dated September 9, 2015 (Bates stamped Nos. A000001 – A000002).

l.     *Plaintiff's document production* dated November 4, 2015 Bates stamped A000003 – A134210.

m.     *Defendants' Third Requests for Production to Plaintiff, Aetna Life Insurance Company*, dated November 5, 2015 requesting records on medical billing, coding, and charges, DRG groupers, Chargemaster

4

Audits and Chargemaster charges from for Memorial Hermann Hospital, Methodist Hospital, M.D. Anderson Hospital and Texas Children's Hospital from 2007 through the present; documents showing the charges made at the noted hospitals; the Chargemasters of the noted hospitals; and all papers indicating the Chargemaster charges, CPT code charges and DRG groups from said hospitals from 2007 through the present.

     i.     *Plaintiff's Objections and Responses to Defendants' Third Requests for Production*, dated December 4, 2015.

n.     *Plaintiff's document production*, dated November 12, 2015 Bates stamped A134211 – A154795.

o.     *Plaintiff's document production*, dated November 18, 2015 Bates stamped A154796 – A154901.

p.     *Plaintiff's document production*, dated December 2, 2015 Bates stamped A154902-A157117.

q.     *Defendant Robert A. Behar, M.D.'s First Set of Interrogatories to Plaintiff*, dated December 3, 2015 inquiring of the alleged damages and overpayments made the basis of Aetna's allegations.

     i.     *Plaintiff's Objections and Answers to Defendant Robert A. Behar, M.D.'s First Set of Interrogatories* dated January 4, 2016.

r.     *Defendant North Cypress Medical Center Operating Company, Ltd.'s First Set of Interrogatories to Plaintiff* dated December 3, 2015 seeking information on Aetna's allegations and related medical claims at issue and damages.

     i.     *Plaintiff's Objections and Answers to Defendant North Cypress Medical Center Operating Co., Ltd.'s First Set of Interrogatories* dated January 4, 2016.

     ii.     *Plaintiff's First Supplemental Objections and Answers to Defendant North Cypress Medical Center Operating Company, Ltd.'s First Set of Interrogatories* dated March 15, 2016.

s.     *Defendant North Cypress Medical Center Operating Company, Ltd.'s First Set of Interrogatories to Non-Parties ConocoPhillips Company and ConocoPhillips Medical and Dental Assistance Plan* dated December 3, 2015.

t.    *Plaintiff's document production* dated December 8, 2015 Bates stamped Nos. A157118 – A189386.

u.    *Defendant North Cypress Medical Center Operating Company GP, LLC's First Set of Interrogatories to Plaintiff*, dated December 9, 2015 seeking answers with regard to each medical claim including the V-number, NORTH CYPRESS claim number, the name of the patient, the date of the UB-04 claims form, the total amount of the CLAIM charged by NORTH CYPRESS, the amounts allowed by Aetna and the total amount reimbursed/paid to NORTH CYPRESS.

       i.    *Plaintiff's Objections and Answers to Defendant North Cypress Medical Center Operating Company GP, LLC's First Set of Interrogatories* dated January 4, 2016.

v.    *Plaintiff's Second Request for Production to Defendants* dated December 10, 2015 relating to any "corruption" to North Cypress' computer services to which North Cypress' Chief Information Officer testified under oath during the hearing held on December 2, 2015.

       i.    *Defendants' Objections and Responses to Plaintiff's Second Requests for Production* dated January 8, 2016.

w.    *North Cypress' document production*, dated December 11, 2015, Bates stamped NCMCRAB0351516 – NCMCRAB0351601.

x.    *North Cypress' document production*, dated December 17, 2015, Bates stamped NORTH CYPRESSRAB0351599 – NORTH CYPRESSRAB0351600.

y.    *Plaintiff's document production*, dated December 22, 2015 Bates stamped A189387 – A189439.

z.    *Defendant's Fourth Requests for Production to Plaintiff*, dated December 22, 2015 requesting pay stubs and bonus stubs to Mark T. Bertolini, Jeff D. Emerson, Ed Neugerbauer, Clarence Carlton King, Ralph Carpenter, Karen Chotiner, Dr. Thomas Lin, Sandra Miller and Beverly Urschel; and, all of the Aetna records on various Aetna employees; and records of Aetna's SIU investigations of out-of-network providers in Harris, Dallas, and Bexar Counties from 2006 to the present.

       i.    *Plaintiff's Objections and Responses to Defendant's Fourth Requests for Production*, dated January 20, 2016.

aa.  *Plaintiff's document production*, dated January 20, 2016 Bates stamped A189440 – A189454.

bb.  *Plaintiff's document production*, dated February 1, 2016 Bates stamped A189455 – A200068.

cc.  *Plaintiff's document production*, dated February 2, 2016 Bates stamped A200069 – A200599.

dd.  *Defendants' document production*, dated February 9, 2016 Bates labeled NORTH CYPRESSRAB0354160 – NORTH CYPRESSRAB0354708.

ee.  *Defendants' document production*, dated February 24, 2016 Bates stamped NORTH CYPRESSRAB0354709 – NORTH CYPRESSRAB0355307.

ff.  *Defendants' document production*, dated February 29, 2016 Bates stamped NORTH CYPRESSRAB0355308 – NORTH CYPRESSRAB0355793).

gg.  *Plaintiff's First Set of Interrogatories to Defendant North Cypress Medical Center Operating Company, Ltd.*, dated March 4, 2016 requesting information on medical claims, damages, affirmative defenses, and contentions.

   i.  *Defendant North Cypress Medical Center Operating Company, Ltd.'s Objections Only to Plaintiff's First Set of Interrogatories*, dated April 1, 2016.

   ii.  *Defendant North Cypress Medical Center Operating Company, Ltd.'s Objections and Answers to Plaintiff's First Set of Interrogatories*, dated April 7, 2016.

hh.  *Defendants' document production*, dated March 2, 2016 Bates stamped NORTH CYPRESSRAB0355794 – NORTH CYPRESSRAB0356434.

ii.  *Defendants' document production* dated March 8, 2016 Bates stamped NORTH CYPRESSRAB0356435 – NORTH CYPRESSRAB0356689.[1]

---

[1]   [North Cypress' Position:] North Cypress' Letter dated March 21, 2016, evidencing that numerous emails from Aetna's Romauldo Esquivel to Dr. Behar were never produced by Aetna noting NORTH CYPRESSRAB0355932, 0356219, 0355946 and 0356114 and the request for information about how the search

jj.     *Defendants' production*, dated April 7, 2016, Bates stamped NORTH CYPRESSRAB0356690 – NORTH CYPRESSRAB0357110.

kk.     *Plaintiff's document production* dated May 24, 2016, "4Q NAP Reports."

ll.     *Plaintiff's document production* dated July 1, 2016, Bates stamped A200600 – A585114.

mm.     [North Cypress:] The Aetna I trial occurred for almost three weeks in May, 2016.

**B.     Additional Discovery Needed Before Trial**

1.     **Plaintiff's Position**

Additional discovery in the form of depositions and documents as described below is needed before trial in order to prosecute Plaintiff's remaining affirmative claims for relief under RICO (with alleged predicate acts of bribery and mail and wire fraud) and for tortious interference with health benefit plans and in-network physician contracts. The listed discovery has not been previously taken in the context of Plaintiff's remaining affirmative claims for relief but could be completed, assuming cooperation by Defendants, within 10 to 12 months.

*Depositions on Plaintiff's affirmative claims*

Plaintiff will need the listed depositions once necessary document productions as described further below have been completed.

(a)     Dr. Behar on topics related to Plaintiff's affirmative claims for relief under RICO and for tortious interference with health benefit plans and in-network physician contracts.

---

terms were used, Mr. Esquivel's mailbox being preserved and searched, the manner of searches and the term periods for which the searches were applied.

(b)     Corporate representatives of North Cypress on topics related to Plaintiff's affirmative claims for relief under RICO and for tortious interference with health benefit plans and in-network physician contracts.

(c)     Limited fact witnesses, including non-party witnesses, on topics related to Plaintiff's affirmative claims for relief under RICO and for tortious interference with contracts. The identification of such witnesses will become better known once the document discovery on Dr. Behar's emails and other preserved information is completed.

*Document production on Plaintiff's affirmative claims*

Plaintiff requests discovery of Dr. Behar's emails.  The emails are part of certain electronically stored information ("ESI"), which was preserved on a computer hard drive and stored in the Court's vault pursuant to the Court's December 22, 2016 Preservation Order (ECF 201).

The Court's December 22, 2016 Preservation Order was the result of Defendants failing to produce Dr. Behar's emails (ECF 25) and being caught red-handed abusing the discovery process, including North Cypress' failure to have a litigation hold in place. Indeed, North Cypress has been embroiled in litigation with the managed care industry since at least 2009 (and in litigation with Plaintiff since early 2013). Yet on December 2, 2015, North Cypress' chief information officer testified under oath before Judge Johnson that she did not know what a litigation hold is and that North Cypress has no one in its IT department involved in litigation holds.[2]

Plaintiff previously provided Judge Johnson with numerous examples of documents obtained from a third-party – Surgical Development Partners ("SDP") – and

---

[2]     *See* ECF100 (Dec. 2, 2015 Hearing Tr.) at 81 (cross-examination of North Cypress' Chief Information Officer (CIO): "Q. Who at North Cypress is involved in litigation holdings? A. I don't know. Q. Do you even know what a litigation hold is? A. No.").

which are directly probative of Plaintiff's allegations, including Dr. Behar's plan to engage in "out of network strategy,"[3] his "directive" to admit non-emergent patients through the emergency room (as opposed to direct admission) so that North Cypress could seek higher reimbursement,[4] and the formulation and implementation of North Cypress' so-called "prompt pay discount" policy in which North Cypress improperly waived the patients' out-of-pocket cost share (*i.e.*, co-pays, deductibles, and coinsurance) to induce patients to use North Cypress as opposed to less costly in-network facilities.[5] Judge Johnson characterized these documents as "smoking gun" documents[6] and became gravely concerned that these and other documents were at serious risk of being destroyed due to North Cypress' lack of a litigation hold.[7]

---

[3]   *Id.* at Exhibit 1 (SDP-00029617-18).

[4]   ECF 25 at Exhibit 1 (SDP-00002245; SDP-00001781-82).

[5]   *Id.* at Exhibit 1 (SDP-00002565-66; SDP-00001696) (Dr. Behar reminding staff to inform patients that their out-of-pocket responsibility would be "equal to what [they would] have to pay had [they] used an in network facility.").

[6]   ECF 98 (Nov. 19, 2015 Hearing Tr.) at 43 ("THE COURT: – and those documents – those emails that I saw were, you know, if they are right, *smoking gun* type – you know, I mean, how this policy kind of came to be.  So I mean, they are very relevant on how the policy came to be.") (emphasis added). Notably, the documents that SPD produced are limited to those in which SDP was privy to communications with North Cypress. For example, North Cypress has not produced any emails exclusively between Dr. Behar and other members of North Cypress' Board of Managers (which do not include SDP) regarding the material issues in the cases with Plaintiff

[7]   ECF100 (Dec. 2, 2015 Hearing Tr.) at 93 ("THE COURT:  There's just some holes, Mr. Sutter, that are unexplainable."); *id.* at 96 (COURT: I haven't heard about any litigation holds. She [North Cypress' CIO] didn't know what that was. . . .  It didn't make any sense to her.  I mean, she's been there since 2010, and didn't know what that was, so I mean, it concerns me."); *id.* at 99 (COURT: "All right, so I agree with you [Mr. Shely] that their [North Cypress] search protocol is defective. I mean, I'm concerned that no one knows what a litigation hold is, so an expert can look at the servers."); *id.* at 101 (COURT: "Yeah, I'm concerned about those litigation hold -- that there's not been a litigation hold on servers and backups. I mean, I'm real concerned about that. I don't understand."); *id.* at 102 (COURT: "What I'm concerned about, at this point, is the lack of a litigation hold where things have been deleted. That's what I'm concerned about."); *id.* at 103 (COURT: "I think that's right, Mr. Sutter. I'm concerned about the management of your servers and litigation holds and what's been produced."); *id.* at 106 (COURT: "What I'm really concerned about here is the lack of a litigation hold and then the lack of production on some of these emails that you had to – you know – you found later after they already knew about them."); *id.* at 114 (COURT: "[W]hat I'm concerned about is people pruning their email lists right now, and there doesn't seem to be a litigation hold in place. . . . I'm very concerned about the lack of a litigation hold and what's being deleted as we speak.").

011168.0208758 HOU 3959725v1

As a result, Judge Johnson issued the December 22, 2016 Preservation Order, requiring (i) the copying and preservation of ("ESI"), including emails and related attachments, on North Cypress' business/general partner computer servers; (ii) the copying and preservation of emails and attachments of 37 individuals on North Cypress' hospital computer server; and (iii) the preservation of ESI on a going forward basis, which relate to either North Cypress' business or the claims and /or defenses in the case.  (ECF 201).

Parts (i) and (ii) of the Court's December 22, 2016 Preservation Order were only partially completed.  (ECF 228).  Moreover, it is unclear whether Defendants ever complied with Part (iii) of the December 22, 2016 Preservation Order.  Accordingly, at this time, Plaintiff anticipates document discovery to include the listed categories:

(a)  Discovery of Dr. Behar's emails and related attachments, which were imaged and placed in the Court's vault, pursuant to the Court's December 22, 2016 Preservation Order (ECF 201).

(b)  Discovery of Dr. Behar's emails and related attachments, which Defendants were ordered to preserve pursuant to the Court's December 22, 2016 Preservation Order (ECF 201).

(c)  Confirmation by affidavit that all of Dr. Behar's emails and attachments, which existed as of December 2, 2015, were included in the ESI that was preserved and delivered to the Court, and, if not, the identity and location of the other computer device(s) that store Dr. Behar's emails.

(d)  Confirmation by affidavit that North Cypress (or its personnel) did not move any additional ESI from the general partner server to other individual desktop computers, laptops, or other computer devices, and, if it did, the identity and location of those computer devices and the date(s) on which the ESI was removed.

(e)  Confirmation by affidavit regarding the dates on which the missing email mailboxes (for the 26 individuals found to have no email mailboxes on North Cypress' hospital server) were expired or deleted, whether such individuals were ever

employed by North Cypress and, if so, the time period of
their employment.

Additional discovery in the form of depositions and documents as described below
may also be needed before trial in order to defend against Defendants' unpled counterclaim
and third-party claims, all of which are baseless in law or fact, should the Court permit
such claims to proceed.  (ECF 39 & 60).

On August 11, 2015, Defendants filed an Original Counter-Complaint and Third
Party Complaint asserting a counterclaim against Plaintiff and third-party claims against
Aetna Inc., Aetna Health Inc., and four Aetna executives, including Aetna's former CEO
Mark T. Bertolini and former head of litigation Ed Neugebauer, for RICO, fraud, malicious
tort of economic harm, tortious interference with patient agreements, breach of fiduciary
duties under ERISA, prohibit transactions between plan and parties in interest, violations
of the Lanham Act, and attorney's fees.  (ECF 20).

On September 10, 2015, Plaintiff filed an emergency motion to strike Defendants'
counterclaim and third-party complaint because the claims had no basis in law or fact and
exceed the scope of the Court's order on leave to file compulsory counterclaims. (ECF 39).
On October 2, 2015, Plaintiff also filed a Motion for Rule 11 Sanctions concerning
Defendants' counterclaim and third-party complaint.  (ECF 60).  On November 19, 2015,
the Court held a hearing and announced on the record that Defendants' counterclaim and
third-party claims were struck.  (Tr. Hearing 11/19/15 at 5).

On October 1, 2016, the parties entered into a tolling agreement in which the parties
agreed that Defendants' counterclaim and third-party claims were struck, but that all
limitations periods on such claims would be tolled until thirty days after the Court's stay
in this matter is lifted.

12

On September 4, 2019, the Court adopted the memorandum and recommendation of Magistrate Judge Johnson to grant in part Defendants' Amended Motion to Lift Stay and to Dismiss Plaintiff's Complaint and Defendants' Supplement to their Amended Motion to Lift Stay and to Dismiss Plaintiff's First Amended Complaint.  (ECF 283, 274, 256, 241).  The Court's adoption order in effect lifts the stay as to Plaintiff's claims for RICO and for tortious interference with contracts relative to any medical claims with dates of service after January 24, 2014 to the present.

On September 19, 2019, Defendants sought leave to re-file their counterclaim and third-party claims.  (ECF 284).  Plaintiff maintains that Defendants' counterclaim and third party claims are frivolous, have no basis in law or fact, and are subject to sanctions under Rule 11 of the Federal Rules of Civil Procedure.  (ECF 36 & 60).  Plaintiff is therefore opposed to Defendants' motion for leave and intends to file a response and renewed motion for sanctions under Rule 11.  Notwithstanding, should the Court permit Defendants to proceed with the proposed counterclaim and third party claims, additional discovery as described below will become necessary.

*Depositions on Defendants' Counterclaims and Third Party Claims*

(a)     Counter-Plaintiff/Third-Party Plaintiff Robert Behar, M.D.

(b)     Corporate representatives of Counter-Plaintiffs/Third-Party Plaintiffs North Cypress Medical Center Operating Company, Ltd. and North Cypress Medical Center Operating Company GP, LLC.

(c)     Limited fact witnesses, including non-party witnesses, regarding Counter-Plaintiffs'/Third-Party Plaintiffs' counterclaim and third-party claims should the Court permit such claims to proceed.  The identification of such witnesses will become known if and when Counter-Plaintiffs/Third-Party Plaintiffs are permitted to refile their counterclaim and

third party claims and once relevant document discovery has been exchanged.

(d)     Expert witnesses designated in support of Counter-Plaintiffs'/Third-Party Plaintiffs' counterclaims and third-party claims.

*Document Production on Defendants' Counterclaims and Third-Party Claims*

(a)     Discovery of information relevant to Counter-Plaintiffs'/Third-Party Plaintiffs' counterclaims and third-party claims.  Identification of such discovery will become better known if and when Counter-Plaintiffs/Third-Party Plaintiffs are permitted to refile their counterclaim and third party claims.

(b)     Discovery of information relevant to any defenses of Counter-Plaintiffs'/Third-Party Plaintiffs' counterclaims and third-party claims. Identification of such defenses and related discovery will become better known if and when Counter-Plaintiffs / Third-Party Plaintiffs are permitted to refile their counterclaim and third party claims.

2.     **Defendants' Position to Aetna's Unnecessary Position**

In its September 4, 2019 Order, this Court simply asked the parties if additional discovery is needed before trial and "why it is needed."  Instead, as is always the case with Aetna and its counsel, they could not help themselves but to reassert the identical arguments that they have been making since 2009 which date back to 2004-2006 even though their only remaining, tenuous (healthcare) claims date from January 25, 2014 through August 31, 2018 (Dkt. 274, pp. 30-35), when Aetna was reimbursing North Cypress for its legitimate healthcare claims at 13% to17% of billed charges, less than Medicare reimbursements.  Aetna began this low reimbursement practice in 2013 pursuant to a policy it formulated for out-of-network providers' claims for both in-patient and out-patient services.  The internal "policy" is found nowhere in the plans/policies, but rather,

14

was implemented by Aetna to punish out-of-network providers and to force them into low reimbursement, in-network contracts.  There has never been any issue that all of North Cypress' goods and services were legitimate and medically necessary.  Aetna's insured members benefitted from necessary treatments at North Cypress.  Aetna wants to proceed as if the trial in Aetna I and the Opinion of the Fifth Circuit of Appeals in Aetna I never occurred. Aetna wants to conduct discovery as if it still has claims dating from 2007 and is not relegated to a small number of claims beginning on January 25, 2014.  After two trials spanning some five weeks, years of discovery, numerous depositions and trial testimony and the production of some 1.5 million pages of documents, Aetna has failed to prove any wrongdoing or fraud on North Cypress' part.  Hence, all that it can do is bluster and claim discovery abuse where there is none.  Aetna's claims are simply about revenge.  **Aetna also continues to fail to advise or present evidence if it has any claims arising from January 25, 2014 through August 31, 2018, which it can in good faith assert considering that by this time, Aetna was only reimbursing North Cypress' claims at 13% to 17% of billed charges, less than Medicare reimbursement rates. The Magistrate Judge warned Aetna about possible Rule 11 violations with regard to its claims. (Magistrate's Recommendation, Dkt. 274, p. 43).**

At no time was North Cypress "caught red-handed abusing the discovery process." In fact, North Cypress did have a litigation "hold" letter in place which was ignored by the Magistrate Judge even though North Cypress offered to present in camera uncontroverted evidence of same. While North Cypress has been involved in litigation with other commercial payors, at no time has it had to pay one dime to any of those payors who made the identical arguments that Aetna made in *Aetna I* and now repeats in *Aetna II* claims

which Aetna whole heartedly lost in *Aetna I*.   Contrary to what Aetna argues, North Cypress has *never* sued the "Healthcare Industry," whatever that is.

North Cypress has previously established that it has met all of its obligations under all preservation orders.   During the Aetna I trial, Aetna threw every document that it had dating back to 2006 at the Court and the jury hoping to establish some type of fraud which it could not and will never prove.   The Court should disregard Aetna's ramblings with regard to the same worn-out arguments that it has dragged out in every single hearing in this case and in *Aetna I*.

On December 2, 2015, this Court[8] conducted a hearing on Aetna's Motion to Compel Production of Dr. Behar's Emails.  (Dkt. 25).   At the conclusion of that hearing, the Court issued a verbal order requiring Dr. Behar and North Cypress to produce to Aetna's lawyers a list of Dr. Behar's emails from North Cypress's servers from 2006 to the present, showing "To," "From," "Ref./Subj." and "Date" and also ordered North Cypress to allow a forensic computer specialist employed by Aetna to access North Cypress's computers to determine any deletions of emails.

Between December 2, 2015, and January 5, 2016, North Cypress, without prejudice to their right to challenge (a) Aetna's Requests for Production of Dr. Behar's Emails; (b) Aetna's Motion to Compel Production of those emails; and, (c) the Court's December 2, 2015 verbal orders, extracted the emails as required from the North Cypress hospital and business servers.   North Cypress's counsel, Kelly, Sutter & Kendrick, and its staff created the Court-ordered list, separating them into three sections:  (a) Dr. Behar's business emails; (b) Dr. Behar's personal and medical practice emails; and, (c) emails to and from dozens

---

[8] For the purposes here, this "Court" refers to the Magistrate Judge, Nancy K. Johnson.

of counsel regarding a wide array of legal matters.  The lists collectively contain over 150,000 emails.[9]

Upon the completion of the list on January 5, 2016, North Cypress filed its Motion for Rehearing.  (Dkt. 116).

On the next day, January 6, 2016, this Court entered two written Orders.  The first memorialized the Court's November 19, 2015, discovery hearing.  (Dkt. 120).  It stated that with regard to whether North Cypress had waived the attorney-client privilege as to the creation of its Prompt Pay Discount Program in 2006-2007, the Court would determine:

> "…what relevant material is extant on the North Cypress servers dating back to 2007.  If any material is determined to be privileged, North Cypress shall prepare a privilege log and the Court will review *in camera* to determine if the document is privileged and whether there is a waiver of privilege based upon prior production of similar emails in the *Aetna I Case*."

However, during the hearing on November 19, 2015, the Court ruled that North Cypress must produce its 2006-2007 emails with counsel pertaining to the creation of the Prompt Pay Discount Program.  This, North Cypress promptly did.  However, since this Court had then changed that verbal Order in its written Order, North Cypress issued a "claw-back" letter to Aetna's counsel.  Aetna's counsel has refused to return the documents for this Court to review *in camera* consistent with its written Order in Dkt. 120.

However, the second Order (Dkt. 121) provided:

> "It is therefore ORDERED that Aetna may hire a forensic expert to search the North Cypress servers for relevant emails sent to or by Dr. Behar.  This includes emails on the hospital server.  Only the date, recipients and 'Re' line may be disclosed, not the email's content."

---

[9] In contrast, in the *Aetna I* Case, Aetna produced only some 7,077 emails from dozens of Aetna employees during an eight year period.

Thus, while the written Dkt. 120 Order allowed North Cypress the opportunity to review the emails, prepare a privilege log and submit privileged emails *in camera* for the Court's review, the written Dkt. 121 Order allows Aetna direct access to North Cypress's servers to search for all of Dr. Behar's emails without regard to his, his patients' or North Cypress's various privileges and conditional rights to privacy.

The written Dkt. 121 Order requires:

> "Disclose the nature and location of any email device, computer and email addressed (sic) used by Dr. Behar since 1-1-2006.  All extant Behar emails, sent or received, dating from 1-1-2006 must be preserved, and a list of those emails produced to Aetna for the same time period."

Once again, the written Order does not provide for a privilege review, a privilege log or an *in camera* review by the Court.  Aetna is given free rein to rummage through North Cypress's and Dr. Behar's data with no restrictions for relevancy, proportionality, constitutional privacy rights, doctor-patient communications, HIPAA right of privacy information or attorney-client privileged communications.  The Order does not even define "relevant" nor does it define "expert" leaving those two terms to Aetna's counsel to determine in his sole discretion.  In other words, he can conclude that anything that he looks at, including Dr. Behar's private emails, are "relevant" and could walk down the hall and ask Andrews Kurth's computer IT person or even Aetna's IT person to serve as the "expert."

In the second paragraph, the Court orders that any document produced in "the related case, *Aetna I* and *North Cypress Medical Center Operating Co., Ltd. v. Cigna Healthcare*, H-09-2556, do not have to be physically reproduced in this action."  (Dkt. 120).  On November 19, 2015, Aetna's counsel argued that his client should not have to be required to reproduce the same requested documents in this case as it did in the identical,

18

*Aetna I Case* and in the *ConocoPhillips Case* (No. 4:14-cv-2248; *North Cypress Medical Center Operating Company, Ltd. v. ConocoPhillips, Incorporated, et al*; In the United States District Court for the Southern District of Texas, J. Ellison) because those two cases involve the same parties, the same documents and the same counsel and Aetna's counsel did not want to have to reproduce those documents.  However, the *Cigna* Case does *not* involve Aetna, does not involve Aetna patients and does not involve the same counsel. Counsel in this case have not produced to each other documents from the *Cigna Case* as the two cases are different.  At no time has undersigned counsel nor has Mr. Shely, counsel for Aetna, ever produced to one another documents in the *Cigna Case* to therefore relieve the burden of having to reproduce those documents.  Indeed, all of the documents produced in the *Cigna Case* cannot be produced to Aetna in this case for several reasons:  (a) there is a Protective Order entered by Judge Ellison in the  *Cigna Case* prohibiting all counsel, including undersigned counsel, from reproducing or utilizing any of the documents produced therein for any purpose other than the *Cigna Case*; and, (b) the medical claims at issue in the *Cigna Case* pertain solely to Cigna patients and enrollees and under HIPAA, those documents cannot be produced to third parties, Aetna and its counsel.  It is not known if the Court simply made a mistake and put "*Cigna Case*" instead of the "*ConocoPhillips Case*" in the Order but it is impossible for either party to follow this Order without violating the Protective Order entered by Judge Ellison in the *Cigna Case*.  Nor can North Cypress violate HIPAA and produce non-relevant, non-Aetna patient medical records and communications and expose itself to a $50,000 per violation under HIPAA.

011168.0208758 HOU 3959725v1

In its January 6, 2015 Order (Dkt. 121), the Court makes certain docket entries which might be construed in an appeal as findings.  North Cypress therefore challenges the following docket entries/findings:

"Aetna complained that North Cypress has continued to fail to produce Dr. Behar's emails that were ordered produced at earlier times." This entry assumes that there were prior Orders compelling production of Dr. Behar's emails with which North Cypress failed to comply.  First of all, prior to December 2, 2015, there was no Order entered in this case compelling the production of Dr. Behar's emails.  Secondly, there is no evidence that Dr. Behar and North Cypress did not comply with orders in other cases regarding the production of electronic communications assuming that is even a relevant discussion in this case which Aetna claims is separate and distinct from the *Aetna I Case*.  Nonetheless, this Court cannot rule upon any discovery Orders entered by Judge Hoyt in the *Aetna I* Case.  Whether North Cypress complied with any Orders in Judge Hoyt's court is not the basis for any complaint in this case.  North Cypress maintains and continues to maintain that it always followed the discovery Orders of Judge Hoyt and produced all documents ordered by Judge Hoyt which were limited to the time period at issue, being 2009 through 2015.

"(Viera [sic-Beata] Kasper, North Cypress's Chief Information Officer) stated that she attempted to locate Dr. Behar's emails from 2007 first in July-August, 2013, several time (sic) in 2014 and a few months ago." This entry is true as far as it goes, but the Court failed to find that those searches yielded results.  As presently stated, the entry suggests that no Behar emails were discovered.  In fact, Ms. Kasper testified that she retrieved Behar emails which she preserved as .pst files which can be produced.  Nor did the Court find (as

it could not prior to the evidence tendered with North Cypress's Motion) that North Cypress and Dr. Behar have retrieved and preserved as .psts of over 150,000 emails sent to and from Dr. Behar since 2006.  North Cypress has also created the list required by the December 2, 2015, verbal Order and the January 6, 2016 written Order.

" … Ms. Kasper was not familiar with any litigation hold on electronically stored information and no one ever asked her to preserve records on the server despite North Cypress's having been in litigation with Aetna for the past five years." The Court did not find (as it could not until North Cypress filed its Motion on January 5, 2016) that North Cypress's counsel sent litigation hold letters to Dr. Behar and other key witnesses and directors at North Cypress in 2012 in connection with the *Koenig Case*.  Those litigation hold letters are still in effect.[10]  The fact that the Information Officer generally in charge of North Cypress's servers did not receive a litigation hold is irrelevant for two reasons.  First, the Motion before this Court was Aetna's Motion to Compel Production of Dr. Behar's emails.  Those emails were the subject of the 2012 litigation hold letters sent in the *Koenig Case*.  Accordingly, even if the Information Director did not receive a litigation hold letter, Dr. Behar did.  Secondly, litigation hold letters are not relevant to any spoliation analysis here since there is no evidence that any of Dr. Behar's emails which may be discoverable in this case were not preserved or were destroyed.

In the January 6, 2016 Order, the Court states:

> "It is therefore ORDERED that Aetna may hire a forensic expert to search the North Cypress servers for relevant emails sent to or by Dr. Behar.  This includes emails on the hospital server.  Only the date, recipient and 'Re' line may be disclosed, not the email's content."

---

[10] In its Motion, North Cypress's counsel offered to produce those litigation hold letters *in camera*.

011168.0208758 HOU 3959725v1

Aetna has produced no evidence of any spoliation, either destruction or deletion by Dr. Behar of any emails, and no valid explanation of why it should be allowed to have its unidentified expert have direct access to North Cypress' computers.  "A party may not inspect the physical hard drives of a computer merely because the party wants to search for additional documents responsive to the party's document requests."  *A.M. Castle & Co. v. Byrne and Oilfield Supply, LLC*, 2015 WL 4756928 at *10 (S.D. Tex. Houston Aug. 12, 2015); *Balboa Threadworks, Inc. v. Stucky*, 2006 WL 763668 at *3 (D. Kan. 2006) ("courts have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection between the computers and the claims in a lawsuit are unduly vague or unsubstantiated in nature).  *McCurdy Group v. American Fine Metal Group, Inc.*, 9 Fed. Appx. 822, 831 (10th Cir. 2001) (affirming the district court's denial of a request to compel production of the opponent's computer hard drives as a "drastic discovery measure" in light of the movant's failure to explain why it should be allowed to inspect them and its only assertion was that it was skeptical that the opponent had produced copies of all relevant and non-privileged documents from the hard drives). Nor has Aetna provided "an expert's testimony no less any other evidence, of their need to have the Court determine Defendants were or have been deleting files".  *Byrne*, *supra.*  See, North Cypress's Motion, "North Cypress's Proffer Of A Resolution," pp. 32-33 *and cases therein cited*.

In addition to failing to establish the prerequisites for such an intrusive investigation, allowing Aetna's expert to access North Cypress's hard drives and servers would violate constitutional rights of privacy, his doctor-patient communications, his patients' right to privacy under HIPAA, and Dr. Behar's and North Cypress's attorney-

client privileges. See, North Cypress's Motion, "The Court's Order Violates The Constitutional and Statutory Rights of Privacy of Dr. Behar, His Family Members and His Patients," pp. 23-27; "The Court's Verbal Order and Aetna's Motion and Request Invade Dr. Behar's and North Cypress's Attorney-Client Privileges," pp. 27-33. The Orders also fail to comply with the Court's obligation to "guard against undue intrusiveness" by granting access to North Cypress's electronic storage devices. (North Cypress's Motion, "North Cypress's Proffer of a Resolution," p. 32).

Finally, the Court's Order completely fails to establish any parameters or protocols for the threatened examination by an Aetna expert. For example, the Court's Order fails to:

(a) *establish the necessary credentials for the "expert" forensic examiner*. The Order imposes no obligation on Aetna's part to establish its expert's qualifications: education, experience, forensic qualifications or any credentials whatsoever to conduct a direct examination on North Cypress's hard drives. Literally, Aetna's counsel could hire either Andrews Kurth's IT person or even Aetna's IT person to invade and inspect an adversary's computer system. This is unheard of and would amount to an abuse of discretion as well as a violation of the other laws cited herein and in North Cypress's Motion. Clearly, any such an expert must be independent and controlled solely by the Court;

(b) *establish any protocol whatsoever for the forensic examiner to follow*. The Court does not require the expert to provide North Cypress notice of what examination he intends to conduct, the equipment and procedures he will follow, the methods he intends to use to safeguard the integrity of both the hardware and data on servers, or any other information to North Cypress as to how he intends to invade, access, duplicate data and otherwise examine North Cypress' servers;

(c) *require mirror imaging of the hard drives*. Instead of requiring that Aetna pay for a mirror image of the North Cypress hard drives, which could then be examined by a forensic expert to the same extent as the hard drivers themselves, the Court's Order allows the expert direct access to the hospital's critical computer equipment.

North Cypress is aware of no precedent allowing an adversarial forensic examination of a medical facility's installed and operating hard drives;

(d)     *define what are "relevant emails".* The Court does not define what is relevant and what is not. It apparently intends to allow Aetna and/or its counsel, adversaries in this case, to make that determination without North Cypress or Dr. Behar having any opportunity to contest what Aetna considers relevant;

(e)     *impose any protection of North Cypress's and Dr. Behar's rights of privacy, doctor-patient confidentiality, attorney-client privilege, attorney work product privilege or any privilege whatsoever nor does the Court's Order contemplate Rule 26(b) requirement that discovery be proportional to the needs of the case. See North Cypress's Motion, "Aetna's Request For Production and Motion to Compel Dr. Behar's Emails are Disproportionate and Unenforceable," pp. 13-23; and,*

(f)     *ensure that any invasive search will not damage or alter North Cypress's hardware, servers and other equipment and that its data will be preserved. See (3), supra.*

There was no discovery abuse on North Cypress' part and all of the Magistrate Judge's discovery orders were based upon a mistaken belief that North Cypress did not have a "litigation hold" letter in place which was simply not true. The fact that the North Cypress IT Director was not aware of the litigation hold letter was completely irrelevant. That IT Director supervised all of the email and computer systems of a 150± bed general acute care hospital with over 2,000 full time equivalent employees who generated tens of thousands of emails per month and over one million per year. The litigation hold letter was specifically and intentionally sent to the individuals who were involved in the issues and named by Aetna as being individuals involved in the facts at issue in this lawsuit. There is no way that an IT Director could look at millions of emails over a fourteen year period and have any idea which emails are relevant to this litigation and which are not, hence, the appropriate people were provided with the litigation hold letter.

*Depositions*

(a)     Depositions of Aetna's expert witness(es) and Rule 30(b)(6) witness(es) pertaining to Aetna's alleged damages with regard to its two remaining causes of action, (1) tortious interference with in-network physician providers' contracts with Aetna and somehow, interference with employers' plans; and, (2) RICO based solely upon bribery/kickbacks for January 25, 2015 through August 31, 2018, with the production of all documents supporting both the liability and *quantum* of those claims.

(b)     Depositions of Mark T. Bertolini, Jeff Emerson, Clarence Carlton King and Edward Neugebauer regarding North Cypress's Counterclaims and Third-Party Claims.

(c)     Depositions of Beverly Urschel, Aetna's SIU Manager, Ralph Carpenter, Sandra Miller, Karen Chotiner and Ronauldo Esquivel regarding Aetna's two remaining claims.

*Document Production*

With regard to Aetna's claim for tortious interference with in-network physicians' contracts with Aetna and employers' plans arising from January 25, 2015 through August 31, 2018, the following documents will be required:

1.     a list of all involved physicians;

2.     all physician contracts at issue;

3.     documents indicating each specific act of interference, by whom and in what manner with the contracts and the physicians;

4.     the exact amount of damages and the manner of calculating same for each specific interference with each particular physician contract;

5.     a list of all employers of all patients whose claims are put at question by Aetna;

6.     all Administrative Services Agreements/Master Services Agreements with those employers with regard to all claims placed at issue by Aetna;

7.      the *quantum* of Aetna's damages versus the patients' damages versus the employers' damages; and,

8.      all documents supporting this claim.

With regard to Aetna's remaining RICO claim based solely upon bribery/kickbacks arising from January 25, 2015 through August 31, 2018, the following documents will be required:

1.      a spreadsheet of all alleged referrals and claims involved;

2.      documents indicating the exact amount of damages associated with each particular referral/claim;

3.      the amount of the kick-back paid for each alleged individual improper referral and the claim associated/proximately resulting with each one;

4.      documents indicating the persons involved and the direct association between each kick-back paid for each referral and the amount of damages for each alleged referral including each claim associated with each referral;

5.      documents supporting each legal basis for a RICO claim, including but not limited to, the underlying wrongful act, each alleged act of wire fraud, the name of each person involved in each act, the type of wire, the time and circumstance of each act, the enterprise, each person involved in the enterprise, the dates of each action occurring in the enterprise and the specific dollar amount of damages and the bases therefore associated with each alleged RICO act;

6.      a list of all claims and patients placed at issue by Aetna separating which of those claims came through the emergency room and which claims were allegedly referred by physicians naming the physician who made the referral whether the physician was an owner of North Cypress or not and the exact amount of the kickback paid to each referring physician (whether he be an owner or not) and for which claim;

7.      notices provided by Aetna and/or any of its representatives to any of the referring physicians whether they be North Cypress owners or not advising them that any monies they received will be "characterized as bribes" by Aetna.

With regard to North Cypress's Counterclaims and Third Party Claims, the following documents will be required:

1.      all documents supporting North Cypress's counterclaims and third party claims based upon intentional actions, violations of RICO and damages associated therewith.

**Note:**  Magistrate Johnson permitted Aetna to file a RICO Case Statement which was filed on November 28, 2018.  (Dkt. 262)  Since Aetna believes that North Cypress' RICO claims are not sufficiently pled, North Cypress should also be afforded the same opportunity to expound upon its RICO claims in a RICO Case Statement.  The Counterclaim and Third Party Complaint filed on September 19, 2019 is the same pleading previously filed.

### *Reasons For Discovery*

North Cypress will need discovery to establish its counterclaims regarding its Third Party Complaint which is the subject of a tolling agreement between the parties effective October 1, 2016. That Complaint will need to be refiled and the Third Party Defendants will need to be make an appearance. With regard to Aetna's two remaining claims, all of the documents requested are necessary because these identical factual issues were tried in *Aetna I* and at no time did Aetna ever present any evidence indicating each specific act of interference with the alleged referral and healthcare claim with regard to tortious interference.  Nor did Aetna ever present any evidence wherein alleged kick-backs were associated with a specific referral/healthcare claim and the exact amount of damages associated with each specific referral/healthcare claim.  Judge Hoyt found no violations of law with regard to the patient referrals. North Cypress will also need the specific discovery noted to determine if Aetna needs to "immediately file a motion to dismiss … claim[s] in order to avoid sanctions authorized by Rule 11." See, the Magistrate's Recommendation which was adopted by the Court. (Dkt. 274, p. 43; Dkt. 283)

011168.0208758 HOU 3959725v1

North Cypress has thirty (30) days from when this Court lifts the various Stays imposed by both it and the Magistrate Judge to refile its Third Party Complaint.

This discovery should be completed in ten months to one year.

### C.    Settlement Discussions

#### *Plaintiff's Position*

The parties have not engaged in any meaningful settlement negotiations either formally or informally.

#### *Defendants' Position*

On numerous occasions in open court (i.e., September 24, 2018, hearing – Dkt. 249, pp. 26, 29, 32, 34), North Cypress has stated it would "walk off" wherein both parties will dismiss their respective, causes of action. On all occasions, Aetna's counsel has rejected this notion and has advised that Aetna will only settle when North Cypress "pays it money."  See also the transcript of the March 16, 2016 hearing, Dkt. 167, pp. 68-70.

The parties have neither mediated this case nor have there been any substantive settlement discussions other than the statements made to the Magistrate Judge.  Therefore, there has been no "progress … made in settling the case."

011168.0208758 HOU 3959725v1

Respectfully submitted,

HUNTON ANDREWS KURTH LLP

By: _____ */s/ John B. Shely* _____
        JOHN B. SHELY
        State Bar No. 18215300
        Southern District No. 7544
        600 Travis, Suite 4200
        Houston, Texas 77002
        (713) 220-4200
        (713) 220-4285 – Fax

ATTORNEY-IN-CHARGE FOR
PLAINTIFF

OF COUNSEL:
ANDREWS KURTH LLP
JEFFREY D. MIGIT
State Bar No. 00794306
Southern District No. 20433

KELLY, SUTTER & KENDRICK, P.C.

By: _____ */s/ J. Douglas Sutter* _____
        J. Douglas Sutter
        State Bar No. 19525500
        Federal Bar No. 3791
        dsutter@ksklawyers.com

ATTORNEY-IN-CHARGE FOR
DEFENDANTS

OF COUNSEL:
KELLY, SUTTER & KENDRICK, P.C.
3050 Post Oak Blvd., Suite 200
Houston, Texas 77056
(713) 595-6000
(713) 595-6001 – Fax

011168.0208758 HOU 3959725v1