**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **AETNA LIFE INSURANCE** | § | |
| **COMPANY** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:15-cv-491** |
| | § | |
| **ROBERT A. BEHAR, MD; NORTH** | § | |
| **CYPRESS MEDICAL CENTER** | § | |
| **OPERATING COMPANY, LTD; and,** | § | |
| **NORTH CYPRESS MEDICAL** | § | |
| **CENTER OPERATING COMPANY** | § | |
| **GP, LLC** | § | |

**NCMC'S (1) REPLY TO AETNA'S RESPONSE TO NCMC'S
MOTION FOR LEAVE TO FILE FIRST AMENDED COUNTER-COMPLAINT;
AND, (2) RESPONSE TO AETNA'S RULE 12(b), FED. R. CIV. P. ARGUMENTS[3]**

**KELLY, SUTTER & KENDRICK, P.C.**
**J. Douglas Sutter**
**Fed. ID No. 3791**
**SBN 1952550**
**3050 Post Oak Boulevard, Suite 200**
**Houston, Texas 77056**
**Tel.:  (713) 595-6000**
**Fax:  (713) 595-6001**
**Email:  dsutter@ksklawyers.com**

**OF COUNSEL:**
**Wilson, Elser Moskowitz Edelman**
**& Dicker LLP**
**Neil L. Prupis**
**Federal Bar No. NP 5500**
**N.J. State Bar No. 270641971**
**200 Campus Drive**
**Florham Park, New Jersey 07932**
**(973) 735-5775 – Telephone**
**(973) 624-0808 – Facsimile**
**Email:  neil.prupis@wilsonelser.com**

**ATTORNEYS FOR DEFENDANTS**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES ................................................................................ iii

AETNA'S DESIRED, UNLEVEL PLAYING FIELD .......................................... 1

ARGUMENT ........................................................................................................ 3

    *Status Of Litigation* ...................................................................................... 3

    *Fifth Circuit Law On Leave To Amend* ........................................................ 4

    *Tolling Agreement* ........................................................................................ 7

    *There Is No Prejudice To Aetna* ................................................................... 8

    *Futility Of Amendment/Aetna's Rule 12(b) Arguments* ............................... 9

FRAUD CLAIM .................................................................................................. 11

    *NCMC's Fraud And Other Claims Are Not Preempted By ERISA* ............ 11

    *The Fraud Claim Is Adequately Pled* ........................................................ 14

MALICIOUS TORT OF ECONOMIC HARM ................................................... 17

TORTIOUS INTERFERENCE WITH PATIENT AGREEMENTS ................... 19

ALTERNATIVE ERISA BREACH OF FIDUCIARY DUTY ............................ 20

ALTERNATIVE ERISA 502(a) Or 503 ............................................................. 22

    *Futility Of Administrative Remedies* ......................................................... 24

ALTERNATIVE CLAIMS UNDER ERISA 502(c) ........................................... 26

BREACH OF CONTRACT AS TO NON-ERISA PLANS ................................. 27

CLAIM FOR UNJUST ENRICHMENT ............................................................. 28

CONCLUSION .................................................................................................... 30

# TABLE OF AUTHORITIES

## Case

*Amato v. Bernard*, 618 F.2d 559 (9th Cir. 1980) .......................................................................... 24

*Anderson v. U.S. Dept. of Hous. & Urban Dev.*, 554 F.3d 525 (5th Cir. 2008) ........................... 28

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................... 9

*Berger v. Edgewater Steel Co.,* 911 F.2d 911 (3d Cir. 1990) ................................................. 24, 25

*Bernstein v. Citigroup Inc.,* No. 3:06-CV-209-M,
    2006 U.S. Dist. LEXIS 54712 *1-*2 (N.D. Tex. July 5, 2006) ................................................ 26

*Bonanno v. Thomas*, 309 F.2d 320 (9th Cir. 1962) .......................................................................... 3

*Boudeloche v. Grow Chem. Coatings Corp.*, 728 F.2d 759 (5th Cir.1984) .................................... 9

*Bowers v. Missouri, Kan. & Tex. Ry. Co.*, 241 S.W. 509
    (Tex.Civ.App. -- Texarkana 1922, no writ) ............................................................................ 29

*Burlington N. R.R. Co. v. Sw. Elec. Power Co.,* 925 S.W.2d 92
    (Tex.App.-Texarkana 1996) ..................................................................................................... 29

*Clark v. Amoco Prod. Co*., 794 F.2d 967 (5th Cir.1986) ................................................................ 9

*Coghlan v. Wellcraft Marine Corp.,* 240 F.3d 449 (5th Cir.2001) ............................................... 29

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir.2000) ........................................... 9

*Curry v. Contract Fabricators Inc. Profit Sharing Plan,* 891 F.2d 842
    (11th Cir. 1990) ......................................................................................................................... 25

*Cuvillier v. Taylor*, 503 F.3d 397 (5th Cir. 2007) ........................................................................ 10

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) ........................................................................ 12

*Davis v. AIG Life Ins.,* 945 F. Supp. 961 (S.D. Miss. 1995) ........................................................ 24

*Dozier v. Sun Life Assur. Co.,* 466 F.3d 532 (6th Cir. 2006) ....................................................... 24

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594 (5th Cir. 1981) ................................................... 5

*E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785 (5th Cir. 2008) ............................... 11, 12

*Elite Door & Trim, Inc. v. Tapia*, 355 S.W.3d 757 (Tex. App. – Dallas 2011) ......................... 27

*Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262 (5th Cir. 2004) .................................... 11

*Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F.Supp.2d 938 (E.D.Tex.2011) ............. 23

*Ernst & Young, L.L.P. v Pacific Mut. Life Ins.*, 51 S.W.3d 573 (Tex.2001) ............................... 16

*Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000) .................................................. 29

*Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332 (5th Cir. 1999) ........................................... 12

*Gulf Oil Corp. v. Lone Star Producing Co.*, 322 F.2d 28 (5th Cir. 1963) ................................... 29

*Harris Methodist Fort Worth v. Sales Support Servs.*, 426 F.3d 330 (5th Cir. 2005) .................................................................................................................... 22

*Helscher-Strauss v. Sara Lee Corp.*, CIV A. 06-1627, 2006 WL 2135351 (E.D. La. July 28, 2006) ...................................................................................................... 26

*Hessbrook v. Lennon*, 777 F.2d 999 (5th Cir. 1985) ................................................................... 24

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.,* No. 02-0299, 2002 U.S., 2002 WL 32107216 (S.D. Tex. Aug. 12, 2002) ...................................................................... 10

*In re Lipsky*, 460 S.W.3d 579 (Tex. 2015) ................................................................................... 17

*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990) ............................................................ 12

*Johnson v. Wells Fargo Bank, NA,* 999 F.Supp. 2d 919 (N.D. Tex. 2014) ........................... 28, 29

*Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987 (5th Cir. 2005) .................................................. 6

*King v. Bluecross Blueshield of Alabama*, 439 Fed.Appx. 386 (5th Cir. 2011) ........................... 12

*Marin K Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004) ................................................................................................................ 10, 21

*Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368 (5th Cir. 2014) ................................................................................................................... 5, 6

*Mayeaux v. Louisiana Health Serv. Indem. Co.*, 376 F.3d 420 (5th Cir. 2004) ....................... 5, 6

*McPeters v. Edwards,* 806 F. Supp. 2d 978 (S.D. Tex. 2011) ..................................................... 10

*Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674 (6th Cir. 1974) ................................... 10, 17

iv

*Murphy v. Reliance Standard Life Ins. Co.,* 247 F.3d 1313 (11th Cir. 2001)............................. 25

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461
   (5th Cir. 2018)....................................................................................... 4, 6, 7, 9

*N. Cypress Med. Ctr. Operating Co., et al v. Cigna Healthcare, et al.,*
   782 F.Supp.2d 294 (S.D. Tex. 2011) ............................................................... 13

*N. Cypress Med. Ctr. Operating Company, et al v. Cigna Healthcare, et al,*
   781 F.3d 182 (5th Cir. 2015) ...................................................................... 13, 22

*Natural Gas Pipeline Co. v. Harrington*, 246 F.2d 915 (5th Cir. 1957)........................................ 29

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74
   (Tex. 2000)................................................................................................ 19, 20

*Quality Infusion Care, Inc. v. Unicare Health Plans of Tex.*, No. H-06-1689,
   2007 WL 760368 (S.D. Tex. March 8, 2007) ................................................... 11

*Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148 (5th Cir. 1981)..................................................... 6

*Sanctuary Surgical, Ctr., Inc.,* No. 10-81589-CIV., 2013 WL 149356........................................ 23

*Schilk v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2nd Cir. 1974) ............................................. 10

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983)........................................................................ 11

*Skinner v. Switzer*, 562 U.S. 521 (2011) ...................................................................................... 18

*Staats v. Miller,* 150 Tex. 581, 243 S.W.2d 686 (1951) .............................................................. 29

*Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863 (5th Cir. 2000)................................................. 9

*Tango Transp. v. Healthcare Fin. Servs. LLC,* 322 F.3d 888 (5th Cir. 2003).............................. 22

*Texas Life, Acc. Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.,*
   105 F.3d 210 (5th Cir. 1997). ......................................................................... 22

*The Cadle Co. v. Schultz,* 779 F.Supp. 392 (N.D.Tex.1991)................................................. 10, 17

*Trenholm v. Ratcliff,* 646 S.W.2d 927 (Tex.1983)....................................................................... 14

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370 (5th Cir. 2004)............................. 9

*Waste Mgmt. v. Texas Disposal Sys. Landfill, Inc*. 434 S.W.3d 142 (Tex.2014) ......................... 19

*Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397 (7th Cir. 1996)..................................... 25

*Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600 (5th Cir. 2006)................................................ 12

*Wool v. Tandem Computers, Inc*., 818 F.2d 1433 (9th Cir. 1987)................................................ 10

Zephyr Aviation, L.L.C. v. Dailey, 2001 WL 332822 (5th Cir. Apr. 4, 2001) ......................... 24

**Statutes**

1002(21)(a) .......................................................................................................................... 13

29 U.S.C. § 1132.................................................................................................................. 11

29 U.S.C. § 1132(a) ...................................................................................................... 12, 22

29 U.S.C. § 1132(a)(1)(B) ................................................................................................... 12

29 U.S.C. § 1132(c) ............................................................................................................. 27

29 U.S.C. § 1132(c)(1)(B) ................................................................................................... 23

29 U.S.C. § 1133.................................................................................................................. 22

29 U.S.C. § 1144.................................................................................................................. 11

29 U.S.C. § 1144(a) ............................................................................................................. 11

ERISA § 502 ................................................................................................................. 11, 12

ERISA § 502(a).............................................................................................................. 22, 23

ERISA § 502(a)(1)(B) .................................................................................................... 12, 22

ERISA § 502(a)(3) .................................................................................................... 12, 22, 23

ERISA § 502(c) .............................................................................................................. 26, 27

ERISA § 502(c)(1)(B)........................................................................................................... 23

ERISA § 503 .................................................................................................................. 22, 23

ERISA § 404 .................................................................................................................... 23

ERISA § 514 .................................................................................................................... 11

ERISA § 514(a) ............................................................................................................... 11

Tex. Ins. Code § 843.363 ............................................................................................... 20

ERISA § 514(a) ............................................................................................................... 11

**Rules**

Rule 8(a), Fed. R. Civ. P. ............................................................................................... 11

Rule 8(a)(2), Fed. R. Civ. P. .......................................................................................... 18

Rule 9, Fed. R. Civ. P. ................................................................................................... 23

Rule 9(b), Fed. R. Civ. P. ............................................................................ 10, 11, 14, 17

Rule 11, Fed. R. Civ. P. .................................................................................................. 17

Rule 12(b), Fed. R. Civ. P. ............................................................................................... 9

Rule 12(b)(6), Fed. R. Civ. P. ...................................................................................... 9, 26

Rule 15, Fed. R. Civ. P. ..................................................................................................... 4

Rule 15(a), Fed. R. Civ. P. ................................................................................................ 6

Rule 54(c), Fed. R. Civ. P. .......................................................................................... 18, 23

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **AETNA LIFE INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:15-cv-491** |
| | § | |
| **ROBERT A. BEHAR, MD; NORTH** | § | |
| **CYPRESS MEDICAL CENTER** | § | |
| **OPERATING COMPANY, LTD; and** | § | |
| **NORTH CYPRESS MEDICAL** | § | |
| **CENTER OPERATING COMPANY** | § | |
| **GP, LLC** | § | |
| | § | |

**NCMC'S (1) REPLY TO AETNA'S RESPONSE TO NCMC'S**
**MOTION FOR LEAVE TO FILE FIRST AMENDED COUNTER-COMPLAINT;**
**AND, (2) RESPONE TO AETNA'S RULE 12(b), FED. R. CIV. P. ARGUMENTS[3]**

**TO THE HONORABLE JUDGES OF SAID COURT:**

COME NOW the Defendants (collectively "NCMC") and show the following:

**AETNA'S DESIRED, UNLEVEL PLAYING FIELD**

1.      In a brief, half-hearted argument, Aetna attempts to have this Court permit it to file

a Complaint, amend that Complaint, conduct its paper discovery for one year only on its

Complaint, wait more than four years while this case is stayed pending the outcomes of *Aetna I* in

both the district court and the Fifth Circuit and then, to re-continue the case with only its Complaint

on file and no compulsory counterclaims arguing that all along this was the Court's intent.  If that

is accurate, Aetna can file a Complaint and conduct discovery on that Complaint but NCMC is not

entitled to file a compulsory Counter-Complaint as a result of a court-imposed stay order nor

conduct discovery on its allegations and claims without any *bona fide* reason for withholding leave

to NCMC.  That is how Aetna interprets the current status of the pleadings.

1

2.   The following is exactly what occurred:

| Date | Activity |
| --- | --- |

7/24/2015   Judge Lake holds a Motion Conference wherein he denied NCMC's Motion to Dismiss based solely upon an oral order to stay the proceeding pending the district court outcome in *Aetna I*. Judge Lake did not rule on the substantive parts of the Motion to Dismiss, but rather, deferred that ruling by virtue of the stay. (Dkt. 231, p. 5)

* * *

In an unusual ruling and notwithstanding the "stay" imposed, Judge Lake permitted paper discovery to proceed for a six-month period and deposition discovery during a second six-month period thereafter. (*Id.*) The deposition discovery *never* began due to subsequent, additional stays of this case unilaterally imposed by the Court pending Aetna's appeal to the Fifth Circuit of Judge Hoyt's Final Judgment dismissing Aetna's identical claims in *Aetna I*.

* * *

**Thereafter, during this same Motion Conference, Judge Lake specifically granted permission to NCMC "<u>to file any compulsory counterclaims</u>" as indeed, he would have to do without favoring one party over the other. (*Id.*, p. 14)**

8/11/2015   NCMC filed its compulsory Counter-Complaint against Aetna and added a Third-Party Complaint against another Aetna entity and several of Aetna's officers just as Aetna had done in its Original Complaint. (Dkt. 20) At the same time, NCMC filed its Answer to Aetna's Complaint. (Dkt 21)

11/19/2015   During a Motion Hearing before the Magistrate Judge, she inferred that she had a previous conversation with Judge Lake revealing that "he doesn't think he [permitted the filing of a counterclaim by NCMC]." (Dkt 98, pp 4-5) Obviously, that was incorrect because on July 24, 2015, Judge Lake specifically stated on the record that NCMC may "**<u>file any compulsory counterclaims.</u>**" (Dkt. 23, p. 14) The counterclaims filed by NCMC on August 11, 2015, were indeed compulsory in nature.

(Dkt. 21) (That is the only fair and just decision Judge Lake could make.  He could not permit Aetna to file a Complaint and then indefinitely stay NCMC from filing compulsory counterclaims under the circumstances of allowing discovery to proceed notwithstanding the "stay" for a one year period on those pleadings.  There would be no legitimate and sustainable-on-appeal reason to do so.)

* * *

The subsequent, written Minute Entry by the Magistrate Judge specifically states the following:  "Defendants **Third** **Party** **Complaint** [*only*]…in conformity with the Court's Minute Entry Order dated July 24, 2015" **is stricken**.  (Dkt. 120)  Therefore, NCMC's Counter-Complaint against Aetna was *not* stricken, *nor* could it justifiably be, and certainly, Judge Lake permitted it to be filed as noted above.

## ARGUMENT

### *Status Of Litigation:*

3.      NCMC is entitled to file a compulsory counterclaim.  If Aetna is correct that the NCMC Counter-Complaint was stricken, NCMC had and still has no ability to conduct any discovery except for that discovery pertaining to Aetna's Complaint, which has thus far involved the majority of the one-year of paper discovery.  If the Counter-Complaint was stricken, neither the District Court nor the Magistrate Judge provided any bases for such a ruling because there are none.  Staying a case after the filing of a complaint and then allowing discovery for one year thereon cannot possibly preclude the Defendants from filing their compulsory counterclaims.  See *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962) wherein courts should provide written opinions expressing their rationale for granting or denying a motion to dismiss.  The Magistrate Judge's verbal order of November 19, 2015, was made *sua sponte*.  Aetna *never* moved to dismiss NCMC's Counter-Complaint for that reason.  Aetna's efforts were primarily directed toward the dismissal of NCMC's Third Party Complaint as not being permitted.  (Dkt. 39)  NCMC was

effectively precluded from conducting discovery on its compulsory counter-claims, its discovery being limited only to its affirmative defenses contained in its Answer.  (Dkt. 21)  There was/is no basis to preclude NCMC's compulsory counter-claims once Aetna was entitled to maintain its Complaint and one year of discovery thereon and certainly after it was allowed to amend that Complaint to conform to RICO pleading requirements.  That is why Judge Lake permitted the filing of NCMC's counter-claims on July 24, 2015, whether he later recalled doing so or not.  (Dkt. 23, p. 14)  A situation *cannot* be created by a court wherein a defendant is refused leave to file a compulsory counterclaim without any reason pending a court-imposed "stay," be precluded from conducting discovery during a one-year period on its counterclaims and then, when the continued stay is finally lifted after four years and before discovery is underway, that defendant is still precluded from filing its compulsory counterclaims.  That is a recipe for an automatic reversal of the entire case on appeal resulting in a huge waste of time, effort and money.

***Fifth Circuit Law On Leave To Amend:***

4.      Given the history of this case, the pre-discovery stage of litigation and the liberal standard for granting leave to amend under Rule 15, Fed. R. Civ. P., one would typically expect not to see opposition to such an amendment request under these circumstances.  But that is exactly how Aetna operates.  Every issue in this case is a fight to the death.  Amazingly, Aetna cites the Fifth Circuit's Opinion in *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018) which it fought so hard to prevent after the dismissal of all of its claims in *Aetna I* for the proposition that "[L]eave to amend may be denied for undue delay, bad faith and dilatory motive on the part of the movant, reported failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment."  (Dkt. 298, p. 6)  Here, Aetna does not claim, nor does it present any evidence that

4

NCMC's compulsory counterclaims will cause any "undue delay, bad faith or dilatory motive on the part of [NCMC], [or] repeated failures to cure deficiencies by amendments previously allowed…."  None of these things have occurred.

5.      There is *no* "undue delay" because discovery has *not* even re-commenced; there is *no* bad faith because NCMC is entitled to bring compulsory counterclaims as ordered by Judge Lake (Dkt. 23, p. 14); there is *no* dilatory motive on the part of NCMC because discovery is just about to re-commence; there have been *no* repeated failures by NCMC to cure deficiencies by amendments[1] previously allowed because there have been *no* such "previously allowed" amendments; and, there is *no* "undue prejudice" to Aetna because (a) discovery has not re-commenced and (b) in the parties' Joint Status Report filed on September 24, 2019 (Dkt. 285), Aetna is on fair notice of the discovery that NCMC intends to take with regard to its compulsory counterclaims.

6.      Paradoxically, Aetna refuses to recognize the fact that Judge Hoyt's refusal to allow Aetna to amend its pleadings in *Aetna I* to bring RICO claims against Behar and NCMC were not a ruling on the "futility of that Amendment," which it was.  (*Aetna I* Dkt. 179, p. 3)  That is one of the reasons why NCMC opposed Aetna's motion for leave in *Aetna I*.  (*Id.*)

7.      The Fifth Circuit reviews denial of leave to amend for abuse of discretion. *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597-98 (5th Cir. 1981).  Under the liberal pleading presumption, discretion "may be misleading" because [R]ule 15(a) evinces a bias in favor of granting leave to amend."  *Mayeaux v. Louisiana Health Serv. Indem. Co.*, 376 F.3d 420, 425 (5th

---

[1] The Court did, however, instruct Aetna to amend its Complaint due to its minimal and unacceptable RICO allegations.  (Dkt. 247)

Cir. 2004).  Rule 15(a) requires the trial court to "freely give leave when justice so requires."  Rule 5(a), Fed. R. Civ. P.  Leave to amend is not automatic but a district court needs "a 'substantial reason' to deny a party's request for leave to amend."  *Marucci*, 751 F.3d at 378; *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005).  Here, neither the District Court nor the Magistrate Judge provided *any* reason, much less a "substantial and ['explicit'] reason" not to allow NCMC to file its Counter-Complaint back in 2015, if indeed that occurred.

8.       "In light of the presumption of allowing pleading amendments, courts of appeals routinely hold that a district court's failure to provide an adequate explanation to support its denial of leave to amend justifies reversal."  *Mayeaux*, 376 F.3d at 426.  The Fifth Circuit has a "strong practice for *explicit* reasons" in denying leave to amend, and it has "expressly stated that motions to amend should be freely granted and that a district court's failure to explain its reasons for denying the motion typically warrants reversal.  *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 153-54 (5th Cir. 1981); *Marucci*, 751 F.3d at 378.

9.       In *N. Cypress v. Aetna*, 898 F.3d at 480, the Fifth Circuit found that Aetna's motion for leave was untimely in light of the particular procedural history of the case and that the district court's denial of leave to amend was justified based on undue delay.  Specifically, the Court found that Aetna had filed its motion for leave just *before* both the parties' dispositive motions were due and the close of discovery.  *Id.*  Here, those facts are *not* present.  The Court has not yet even entered a Docket Control Order for the cut-off dates for dispositive motions and for the beginning of discovery, much less the cut-off date for discovery.  That is the purpose of the hearing scheduled for November 12, 2019, as a result of the filing of the parties' Joint Status Report filed on September 24, 2019 (Dkt. 285), pursuant to Judge Lake's Order of September 4, 2019 so requiring. (Dkt. 283)

10.     Therefore, there are *no* factual or legal bases to deny NCMC's Motion for Leave to file compulsory counterclaims based upon the holdings of *N. Cypress v. Aetna*, 898 F.3d at 479-80.  To the contrary, it will be reversible error for this Court not to grant leave.

***Tolling Agreement***:

11.     Notwithstanding the non-obligatory language in the first "Whereas" paragraph of the Tolling Agreement between NCMC and Aetna effective October 1, 2016, the contractual portion of that Agreement tolled *only* "NCMC's *Third Party Complaint*…from the Effective Date of [the] Agreement until thirty (30) days after the stay is lifted." (See Dkt. 294, Exhibit "A.") Hence, the Tolling Agreement pertains *solely* to NCMC's Third Party Complaint which is *not* an issue because NCMC is no longer asserting that Complaint.

*12.*     Based upon the foregoing, NCMC is *not* "trying to obtain leave to amend under false pretenses," whatever one of Aetna's many counsel, Mr. Pidcock means.  The transcript of Judge Lake's ruling is extremely clear:  NCMC is entitled "*to file* *any* *compulsory* *counterclaims* [Dkt. 23, p. 14]*" and therefore, those compulsory counterclaims are still on file and NCMC should be granted leave to amend them at this time. [2]  Obviously, there was a lack of recollection with regard to the Court's ruling which need not be "appealed or changed" because it is a matter of record.  (*Id*.)  Neither the Court nor the parties had the benefit of the transcript of proceedings of the July 24, 2015, Motion Conference until six months later, on January 27, 2016 (Dkt. 98) when it was produced by Mary Henry of Judicial Transcribers.

---

[2] If the Court believes it to be necessary, it can simply set aside its verbal and/or written docket entry order (Dkt. 98, pp. 4-5; Dkt. 120) allegedly striking the Counter-Complaint.

7

***There Is No Prejudice To Aetna:***

13.     The only alleged "prejudice" that Aetna can come up with is that the Counter-Complaint contains "a parade of irrelevant and inaccurate accusations and empty posturing in a futile search of a viable cause of action."  Notwithstanding the fact that these allegations will be proven during discovery, in order to support this silly position, Aetna cites in fn. 2 to its Response (Dkt. 298, p. 3) NCMC's assertions pertaining to the amount of money paid to Aetna's CEO with the millions of dollars that it withheld from NCMC and other, out-of-network providers for their legitimate healthcare claims.  Of course, when Aetna presents to a federal court jury in *Aetna I* an image of a dollar bill with Behar's face superimposed upon it and/or writes in its First Amended Complaint similar allegations, they are not prejudicial or a "parade of irrelevant and inaccurate accusations."  For example, see the following:

> This is about the improper, illegal, and fraudulent conduct of Behar and NCMC to target Aetna patients and *bilk millions* in healthcare insurance payments from Aetna…annual gross revenues that exceed $1.5 billion dollars a year – more than twice the revenues of nearby hospitals…. extraordinary revenues make it an extreme outlier in the *healthcare industry*, and were not achieved by creating a higher quality and a more efficient hospital facility, but rather through a systematic pattern of illicit schemes.  (Dkt. 255, pp 1-2)

14.     These were the *identical* allegations made by Aetna in *Aetna I*, but at no time during almost five weeks of two trials therein did Aetna *ever* prove these allegations.  Aetna will not even waste the time on attempting to prove these baseless allegations in this case because there is *no* evidence of same as was demonstrated in *Aetna I*.  Aetna clearly lives in a glass house and therefore, should not throw stones.

15.     Finally, there can be *no* prejudice to Aetna since there are *no* discovery or dispositive motion deadlines thus far set.  If prejudice is caused simply by the filing a complaint,

then NCMC is "prejudiced" by the filing of Aetna's First Amended Complaint (Dkt. 255); so, according to Aetna's logic, that Complaint *must* be dismissed.

***Futility Of Amendment/Aetna's Rule 12(b) Arguments:***

16.     The only part of the *N. Cypress v. Aetna* Opinion that Aetna truly argues is the "futility of the amendment."  In essence, Aetna's Response to NCMC's Motion for Leave is a Rule 12(b) motion to dismiss even though it claims that no Counter-Complaint exists and no leave to file one has been granted by the Court.  When considering whether an amendment is futile, the Fifth Circuit evaluates whether the amendment would fail to state a claim and applies the same standard as a Rule 12(b)(6) motion to dismiss.[3] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).  "The question therefore is whether in the light most favorable to the plaintiff [NCMC] and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000).

17.     A Rule 12(b)(6) dismissal is not warranted even *if* the court "believes the plaintiff is unlikely to prevail on the merits." *Clark v. Amoco Prod. Co*., 794 F.2d 967, 970 (5th Cir.1986). "Even *if* it seems 'almost a certainty to the court that the facts alleged cannot be proved to support the legal claim,' the claim may not be dismissed so long as the complaint states a claim." *Id.* (quoting *Boudeloche v. Grow Chem. Coatings Corp*., 728 F.2d 759, 762 (5th Cir.1984)); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp*., 355 F.3d 370, 376 (5th Cir. 2004).

18.     A plaintiff must only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is well-settled that in order to survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual

---

[3] Since Aetna's Response is to be treated as a Rule 12(b) motion to dismiss, NCMC cannot be limited to the number of pages for a normal Reply to a Response.  Here, NCMC is within the Local Rule's combined page limits for both a Reply and a Response.

allegations," but must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true "raise a right to relief above the speculative level." *McPeters v. Edwards,* 806 F. Supp. 2d 978, 983 (S.D. Tex. 2011) (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)). The Court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Marin K Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). Accordingly, NCMC need only plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*

**Rule 9(b), Fed. R. Civ. P.:**

19. However, when certain information is peculiarly within the defendant's knowledge, the courts are more forgiving in applying Rule 9(b), finding that less detail is required in such cases. *In re Enron Corp. Sec., Derivative & "ERISA" Litig.,* No. 02-0299, 2002 U.S., 2002 WL 32107216, at *11 (S.D. Tex. Aug. 12, 2002) (citing *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987) ("when the information is within the knowledge of the opposing party, Rule 9(b)'s particularity-in-pleading requirement may be relaxed"); *The Cadle Co. v. Schultz,* 779 F.Supp. 392 (N.D.Tex.1991) ("if the information surrounding the allegations is peculiarly within the knowledge of the defendant, less detail is required in the complaint"); *Schilk v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2nd Cir. 1974); *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 680 (6th Cir. 1974) ("It is a principle of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery. Rule 9(b) does not require omniscience; *rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put the defendants on notice as to the nature of the claim*"). Here, Aetna is more than familiar with the facts and claims asserted in this case. It should be able to repeat them in its sleep. Aetna and NCMC have been in litigation over these *identical* factual issues and claims

for almost 7 years since *Aetna I* began on February 12, 2013.  (*Aetna I*, Dkt. 1)  There is *not* one factual allegation or claim which Aetna and its counsel do not already know.

20.     Hence, NCMC's common law fraud claims meet the Rule 9(b) Fed. R. Civ. P. standard and all other claims meet the Rule 8(a) standard by stating a plausible statement for which NCMC is entitled to relief. The Amended Counter-Complaint gives Aetna more than adequate notice of the claims asserted against it. Thus, NCMC's claims in the proposed, Amended Counter-Complaint are not futile.  And, *"it would not be prudent to foreclose [NCMC's] opportunity to produce evidence in support of its properly pled claims."*  Magistrate Judge Johnson – Dkt. 274, p. 42.

## FRAUD CLAIM

*NCMC's Fraud Claim And Other Claims Are Not*
*Preempted By ERISA:*

21.     In this case, the Court has permitted Aetna to bring non-ERISA, state law claims of (a) bribery and (b) tortious interference to contract notwithstanding Aetna's allegations of ERISA preemption.

22.     There are two types of ERISA preemption: conflict preemption under section 514, 29 U.S.C. § 1144, and complete preemption under section 502, 29 U.S.C. § 1132. *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 797 (5th Cir. 2008). *See also, Quality Infusion Care, Inc. v. Unicare Health Plans of Tex.*, No. H-06-1689, 2007 WL 760368, at *2 (S.D. Tex. March 8, 2007); *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 276 n.34 (5th Cir. 2004). First, "Section 514(a) of ERISA, 29 U.S.C. § 1144(a) pre-empts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by ERISA." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983). "Section 514(a) was intended to ensure that plans and plan

sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990). To determine whether a state law relates to an employee benefit plan, the Fifth Circuit instructs courts to consider (a) "'whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and, (b) whether the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.'" *King v. Bluecross Blueshield of Alabama*, 439 Fed.Appx. 386, 389 (5th Cir. 2011) (unpublished) (quoting *Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006)).

23.     Second, ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), 'sets forth a comprehensive civil enforcement scheme' that 'would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.'" *Sawyer*, 517 F.3d at 797 (quoting *Davila*, 542 U.S. at 208-09). "Accordingly, 'any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted.'" *Id.* (quoting *Davila*, 542 U.S. at 209). *See also*, *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999) ("Section 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action.") ERISA § 502(a)(1)(B) provides a cause of action "by a participant or beneficiary [the assignee NCMC] … to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Similarly, ERISA § 502(a)(3) provides

for an additional cause of action "by a participant, beneficiary, or fiduciary (a) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (b) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *Id.* § 1132(a)(3). A fiduciary is defined as follows:

> [A] person is a fiduciary [Aetna] with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. *Id.* ¶ 1002(21)(a).

24.      Based upon the foregoing authorities and law, in *N. Cypress Med. Ctr. Operating Co., et al v. Cigna Healthcare, et al.*, 782 F.Supp.2d 294 (S.D. Tex. 2011), Judge Ellison ruled that Cigna's Counterclaims (which were identical to Aetna's fraud and tort claims here) against NCMC and Behar for fraud, negligent misrepresentation, unjust enrichment and a permanent injunction under state law were both conflicts and complete preempted under ERISA.  That opinion was later affirmed on appeal by the Fifth Circuit in *N. Cypress Med. Ctr. Operating Company, et al v. Cigna Healthcare, et al*, 781 F.3d 182 (5th Cir. 2015).

25.      In this case, as Aetna acknowledges that the vast majority of the claims it asserts are based upon ERISA plans/policies.  Notwithstanding Judge Ellison's holding to the contrary, this Court is permitting Aetna to bring in this case the RICO claims based upon the Texas statutory bribery law and the Texas common law of tortious interference.  (Dkt. 274, pp. 37-39)  As such, NCMC is entitled to bring its compulsory state law claims for fraud and torts.  Either all of the claims are preempted by ERISA and must be dismissed or none of the claims are preempted by ERISA and must remain.  *N. Cypress v. Cigna,* 782 F.Supp at 294.

13

***The Fraud Claim Is Adequately Pled:***

26.     NCMC adequately plead each required element of fraud with sufficient particularity as required by Rule 9(b) Fed. R. Civ. P. As described below, NCMC provided Aetna with detailed explanation of the who (Aetna, its officers and Special Investigations Unit ("SIU") employees), what (made false and misleading representations that Aetna would pay claims according to the plans'/policies' language), when (Aetna confirmed plan member coverage details with NCMC) and where (at NCMC's Business Office *via* communications from Aetna indirectly to plan members and directly to NCMC) of the circumstances of the fraud.  (Dkt. 294-3 ¶¶ 8-23, 26-30)

27.     Under Texas law, the elements of fraud are: (a) a material representation was made; (b) it was false; (c) when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (d) he made it with the intention that it should be acted upon by the party; (e) the party acted in reliance upon it; and, (f) he thereby suffered injury. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983)

28.     As NCMC alleges in the Amended Counter-Complaint, "*Aetna* conspired with its 'unnamed' officers, Clarence Carlton King, Jeff D. Emerson and Ed Neugebauer and Managers of Aetna's [SIU] to unlawfully and illegally harm and damage [NCMC]" (Dkt. 294-3, ¶ 8) and there was a "fraudulent conglomeration of schemes that were masterminded by Aetna and its officers and employees."  (Dkt. 294-3 ¶ 9)

29.     As noted in ₱ 19, *supra*, all of the allegations of wrongdoing claimed by NCMC are well "within the defendant's knowledge" which is considered by the Court while applying Rule 9(b), Fed. R. Civ. P.  As was established in the vast amount of discovery conducted in *Aetna I* as well as that obtained during the one year of "stayed" discovery in this case, when a Aetna patient

14

member presents himself at NCMC either in the emergency room, in-patient or out-patient for services, he presents his Aetna insurance card to NCMC.  That Aetna card represents that the individual is an Aetna member and provides to NCMC the contact information with regard to his plan/policy.  At that time, NCMC employees actually communicate with Aetna *via* the telephone number provided on the Aetna card to confirm the following:  (a) the patient is an Aetna member; (b) the patient is currently enrolled with an Aetna plan/policy; (b) if there is a plan or policy which actually covers the patient; (d) whether the patient has out-of-network and/or in-network benefits under the plan/policy; (e) the benefits provided under the plan/policy e.g., the actual percentage coverages for both in-network and out-of-network services; and, (f) whether the services anticipated to be provided are covered under the plan/policy.  Anyone who has health insurance and  sees a physician or a hospital knows this occurs and the Court can take judicial notice of same. The information provided by Aetna to NCMC is a representation that the provisions of that patient's employer's plan/policy will cover and pay for the services provided by NCMC *pursuant to* the plan/policy language.  At the time those statements were made, Aetna knew they were false because Aetna's SIU had "flagged" NCMC's claims for particular review and had intended to apply new, internal, and non-plan policies/rules enacted by Aetna to reimburse NCMC at rates substantially lower than what the plans/policies actually required and as were represented to NCMC.

30.    As the Amended Counter-Complaint explains, Aetna *never* intended to pay NCMC according to plans'/policies' coverage language. (Dkt. 294-3 ¶ 9) Despite Aetna's representations to NCMC and plan members, Aetna's malicious intentions provided:  (a) the institution of a permanent and arbitrary flag on all of NCMC's claims delaying payment processes and increasing costs to NCMC by requiring additional steps to be taken before allowing any payment to NCMC;

(b) making reimbursements to NCMC less than the Usual and Customary Rates ("UCR") required under the plans/policies; (c) "*ESCALATE, ESCALATE, ESCALATE*" unnecessary actions taken to injure NCMC; (d) SIU investigations and "**Major Initiatives**" against NCMC intended to injure; (e) intentionally ignoring the applicable plan/policy provisions providing coverage; but, rather utilizing Aetna's arbitrary, internal determinations what to pay; and, (f) *bring down*," **bankrupt**, and "*destroy*" NCMC by falsely representing that it has violated both inapplicable Texas statutes and Federal Anti-Kickback and Stark I and II laws.

31.     Aetna committed fraud  when it made false representations to a third party (the plan members and NCMC as their assignee) with the knowledge that the false representation be made directly to NCMC. *Ernst & Young, L.L.P. v Pacific Mut. Life Ins.*, 51 S.W.3d 573, 578 (Tex.2001). Aetna's materially false representations are actionable because they were intended to influence NCMC's conduct to treat its patient members and to coerce NCMC into signing a low-reimbursement, in-network agreement with Aetna.

32.     Aetna's allegation that NCMC pleading is insufficient is unsubstantiated. Considering that there are thousands of claims at issue, it would be over-burdensome and ridiculous to require NCMC to identify in a pleading the "who, what, when, and where" of the specific telephone calls made by NCMC to Aetna.  As Aetna well knows, all of these telephone calls were memorialized in the electronic Meditech Notes maintained by NCMC's Business Office wherein the name of the NCMC representative, the first name of the Aetna representative, the date of the call, when the call was made, how the call was made and the information provided by Aetna to NCMC are there for all the world to see.  It would literally take hundreds of pages to write down all of this information in a pleading when it is already contained in electronic documents that have been produced in both this case and in *Aetna I* and will further be produced in this litigation once

Aetna identifies its specific claims that it maintains, of course, within the confines of Rule 11, Fed. R. Civ. P. arising from January 24, 2014 to August 31, 2018.  See, Dkt. 274, p. 43.  All of these Meditech Notes were utilized with regard to the 10,000+ claims that were tried in *Aetna I*.  The telephone calls to Aetna illustrate that Aetna acted with malice in its false representations which only needs to be plead generally. Furthermore, the details of the telephone calls made to Aetna are also peculiarly within the knowledge of the Counter-Defendant, Aetna; thus, less detail is required in the Amended Counter-Complaint. Dkt. 294-3, ¶ ¶ 8, 10,  *The Cadle Co. v. Schultz,* 779 F.Supp. 392 (N.D. Tex. 1991).

33.    Aetna  also  claims  NCMC's  pleading  is  insufficient  because  NCMC  does  not identify a specific benefit claim that Aetna denied or underpaid. However, the details of the claims denied,  underpaid  and/or  not  paid  according  to  the  plans/policies  are  peculiarly  within  the knowledge of Aetna; thus, less detail is required in the Amended Counter-Complaint.  *Id.*

34.    The Court should bear in mind the policy of Rule 9(b), Fed. R. Civ. P. As the Court in *Michaels*, 848 F.2d at 680 pointed out, "it is a principle of basic fairness that a [party] should have an opportunity to flesh out her claim through evidence unturned in discovery. Rule 9(b) does *not* require omniscience; rather, *the Rule requires that the circumstances of the fraud be pled with enough specificity to put the defendants on notice as to the nature of the claim*").  Aetna has been given enough specificity in the Amended Counter-Complaint to be put on notice about the nature of the claims asserted by NCMC.

## **MALICIOUS TORT OF ECONOMIC HARM**

35.    The tort of Business Disparagement (a malicious tort of economic harm) indeed exists in Texas. *In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015).  NCMC is *not* required to provide the name of the legal theory of particular torts, only state the grounds which it is entitled to relief—

and NCMC does so on the basis of the tort of business disparagement which protects the economic interest of a plaintiff against pecuniary loss. Rule 8(a)(2), Fed. R. Civ. P. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("Under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory"). Furthermore, pursuant to Rule 54(c), Fed. R. Civ. P., NCMC is entitled to all relief whether or not alleged or prayed.

36.     The elements of Business Disparagement are: (a) the defendant published false and disparaging information about it, (b) with malice, (c) that resulted in special damage to the plaintiff. *Id.* NCMC sufficiently plead grounds for relief for the tort of Business Disparagement because the complaint stated Aetna acted with malice by publishing false and disparaging information about NCMC including, but not limited to:

(a)     publicly claiming that investors/unit holders at NCMC are paid to refer patients to North Cypress Medical Center when Aetna knows and has seen the evidence that such a claim is not true and that there is no correlation between (i) distributions made in due course to Unitholders or offers of units to potential unitholders and (ii) referrals to the hospital (Dkt. 294-3, ¶9(q));

(b)     publicly disseminating statements that physician-owned out-of-network facility providers such as NCMC violate Federal Anti-Kickback statutes and Federal Anti-Referral statutes, Stark I and II, when they know that NCMC has never engaged in such violations and that those statues have no application in the context of a commercial payor (Dkt. 294-3, ¶9(r)); and,

(c)     calling and pressuring patient members who are in the emergency rooms of physician-owned out-of-network facility providers such as NCMC to leave the hospital's emergency room even when they are in an emergent condition telling them that Aetna will not cover any of the expenses at NCMC and that the patients will be left with a "huge medical bill to pay" and then directing the patients to tell NCMC to obtain "an emergency ambulance to immediately transport the patient to a competing in-network facility" which would place the hospital in direct violation of EMTALA and without regard to the patient's serious, emergent medical condition. (Dkt. 294-3, ¶9(s).

18

37.     The Amended Counter-Complaint further states that Aetna acted maliciously by initiating such schemes in geographic areas such as Harris County wherein Aetna closely works with large, competing in-network hospitals such as *Memorial Hermann* to take all actions necessary to financially destroy, bankrupt, "bring down" and harm competing physician-owned out-of-network facility providers such as NCMC.  (Dkt. 294-3, ¶9(u))

38.     As asserted in the Amended Counter-Complaint, NCMC suffered a direct, pecuniary loss from unpaid and/or underpaid claims, the litigation associated with those claims and false accusations made by Aetna. *Waste Mgmt. v. Texas Disposal Sys. Landfill, Inc*. 434 S.W.3d 142,155 (Tex.2014).

39.     Although Aetna is correct that "Texas does not recognize a cause of action for Malicious Tort of Economic Harm," Aetna misconstrues the pleading to insinuate that NCMC attempted to create a made-up cause of action to distract the court from NCMC's assertion of viable claims of a malicious tort of economic harm—Business Disparagement.

### TORTIOUS INTERFERENCE WITH PATIENT AGREEMENTS

40.     NCMC's Amended Counter-Complaint pleads sufficient facts to adequately state plausible grounds for relief based on tortious interference with patient agreements. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 81 (Tex. 2000): (a) NCMC has valid agreements with its patients to medically treat them in consideration of the patient's financial obligations (Dkt. 294-3, ¶ 35); (b) NCMC has valid agreements with its patients through which NCMC provides health care goods and services (*Id.);* (c) Aetna knew of the existence of these agreements (*Id.);* (d) Aetna willfully and intentionally interfered with NCMC' agreements (Dkt.

294-3, ¶ 36); and, (e) Aetna's interference proximately caused injury to NCMC which resulted in actual damages or losses (Dkt. 294-3, ¶ 36).

41.     Given the substantial factual allegations provided in the Amend Counter-Complaint (Dkt. 294-3), the Court's obligation in evaluating the futility of NCMC's arguments by taking the allegations as true, NCMC has stated more than enough facts to state a plausible claim for relief for tortious interference with patient agreements.

42.     Additionally, the argument that Aetna "merely" exercised its own contractual right which it allegedly had an "absolute right to do" is of no moment to the Court's decision to grant NCMC leave to file its amended counter-claims. Aetna has attempted to dispute the facts asserted in the argument by erroneously claiming a futility argument.  Aetna misconstrues the *Prudential* case which states the "[h]ealth insurer…had a privilege to communicate with its insureds about claims against their policies and with hospitals about the propriety of the charges*, but the privilege would not authorize the insurer to falsely and maliciously disparage the company." Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 81 (Tex. 2000).

43.     Aetna does *not* have a contractual right to violate the Texas Insurance Code despite what the rights Aetna claims the contract provides. That Code states "[A] health maintenance organization may *not* in any manner penalize, terminate, or refuse to compensate for covered services a physician, dentist, or provider for communicating in a manner protected by this section with a current, prospective, or former patient, or a person designated by a patient. A contract provision that violates this section is void." Tex. Ins. Code § 843.363.

## ALTERNATIVE ERISA BREACH OF FIDUCIARY DUTY

44.     Aetna's irrelevant assertion that "Defendants' allegations about Aetna's compensation arrangements are flat wrong" holds no weight in the decision of the Court to grant

leave to amend. (Dkt. 298 p. 8)  We are not in the dispositive motion stage of this case.  The standard, rather, is whether a plausible claim is stated if all allegations in the Amended Counter-Complaint are taken as true—not whether the allegations are right or wrong. As such, the Court is to take the facts contained in NCMC's pleading relating to the compensation agreement as true. *Marin K Eby Constr. Co.*, 369 F.3d at 467.

45.     Aetna avers NCMC lacks standing to bring claims for breach of fiduciary duty, prohibited transactions under ERISA and statutory claims for co-fiduciary liability under ERISA because NCMC lacks a valid assignment. (Dkt. 298 p. 8) Aetna attempts to manipulate NCMC's pleading to mislead the Court by only partially quoting the NCMC's assignment clause. *Id.* However, NCMC's Counter-Complaint includes the entire assignment clause which it receives from each patient, including Aetna members and enrollees, who receive treatment at NCMC:

> **I hereby assign and transfer, and do intend to knowingly and expressly assign and transfer to NCMC all claims and causes of action that exist (now or in the future)** in my favor **against any health benefits Plan, Plan Sponsor, insurance company, plan administrator, underwriter and/or ANY OTHER PARTY concerning (1) any action taken (or omission made) with regard to any claim that NCMC submits on my behalf to any health benefits plan, insurance company and/or plan administrator**, whether arising at law or in equity, pursuant to statute, pursuant to regulation or under any body of common law; (2) **all claims and causes of actions based upon breaches of fiduciary duty pursuant to any statute, regulation or under any body of common law**, including but not limited to the Employee Retirement Income Security Act ("ERISA") **against any fiduciary, including (but not limited to) any health benefit Plan, Plan Sponsor, insurance company, payor, plan administrator or other fiduciary . . . .** (Dkt. 294-3, ¶ 25)

46.     And, as found in *Aetna I*, NCMC's Assignment Agreements are valid.  (*Aetna I*, Dkt. 351, p. 17)

47.     Taking the facts contained in the Counter-Complaint as true, NCMC has a valid assignment clause and standing to sue for both breach of fiduciary duty, prohibited transactions

and statutory claims for co-fiduciary liability under ERISA.  It is settled law in the Fifth Circuit

that a health care provider to whom a patient assigns benefits (such as NCMC) has standing to sue

as a "beneficiary" under § ERISA 502(a)(1)(B).  *Harris Methodist Fort Worth v. Sales Support

Servs*., 426 F.3d 330, 333-34 (5th Cir. 2005) ("It is well established that a healthcare provider,

though not a statutorily designated  ERISA beneficiary, may obtain standing to sue derivatively to

enforce an ERISA plan beneficiary's claim"); *Tango Transp. v. Healthcare Fin. Servs. LLC,* 322

F.3d 888, 891-92 (5th Cir. 2003) ("an assignee of a plan participant has derivative standing to

bring a cause of action for enforcement under ERISA").  Also, this legal conclusion was made by

the Court in *Aetna I* and in the Cigna case, *N. Cypress v. Cigna, 781 F.3d* at 195.  Thus, NCMC

has stated a claim for the fourth, fifth and sixth cause of action contained in the Amended Counter-

Complaint. *Texas Life, Acc. Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.,* 105

F.3d 210, 219 (5th Cir. 1997).

### **ALTERNATIVE ERISA 502(a) or 503**

48.    NCMC is entitled to *both* monetary damages, equitable remedies, including but not

limited to restitution, injunctive and/or declaratory relief pursuant to ERISA § 502(a)(3).  In this

action, NCMC, the provider hospital and valid assignee of rights and benefits under the patients'

healthcare plans/policies, is entitled to seek recovery from Aetna the full amount of payments that

Aetna, under ERISA and non-ERISA contracts, is required to make to NCMC for services that

NCMC provided to individual patients who are covered under ERISA and non-ERISA plans that

Aetna administers or insurers.  As such, NCMC has properly pled causes of action for (a) Aetna's

failure to comply with group plans in violation of ERISA § 502(a), 29 U.S.C. § 1132(a); (b),

Aetna's breaches of fiduciary duty of loyalty and care under ERISA §§ 404 and 502(a)(3); (c)

Aetna's failure to provide a full and fair review under ERISA § 503, 29 U.S.C. § 1133; (d) Aetna's

22

violations of claim procedures under ERISA § 502(a)(3); and, (e) Aetna's failure to comply with a request for information pursuant to ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B).  Pursuant to Rule 54(c), Fed. R. Civ. P., NCMC is also entitled to a declaratory judgment that it properly and timely submitted all claims for reimbursement to Aetna and did not engage in any acts of fraud or misrepresentation in its attempts to collect or recover healthcare benefits from Aetna. Furthermore, pursuant to that Rule, NCMC is entitled to all relief whether prayed for or not, including but not limited to the futility of exhausting all administrative remedies.  As noted above, NCMC, as the assignee of its patients' rights and benefits, had secured standing to sue Aetna for failure to make payments to it in accordance with the terms of the applicable ERISA plans/policies.

49.     Aetna also argues that NCMC's Amended Counter-Complaint is "devoid of fact" because NCMC does not provide a particular group of benefits claim, or a particular claim which Aetna underpaid or failed to pay; however, Aetna's reliance on *Sanctuary Surgical*, *Ctr., Inc.,* No. 10-81589-CIV., 2013 WL 149356, at *3 is misplaced.  See *Encompass Office Solutions, Inc. v. Ingenix, Inc.,* 775 F.Supp.2d 938 (E.D.Tex.2011) (holding that relatively general allegations were sufficient to state a claim for breach of contract and entitlement to benefits under ERISA).

50.     Additionally, Magistrate Johnson held that "it is not necessary for [a party] to identify in its pleading every billing claim on which it is suing."  (Dkt. 274 p. 43) Thus, if Aetna was able to meet the heightened pleading standard of Rule 9, Fed. R. Civ. P., NCMC stated a plausible claim which relief could be granted without providing specific group of benefit plans and particular claims.  Furthermore, Aetna is more than aware of the claims that it underpaid to NCMC.  As noted in ¶ 19, *supra*, Aetna has been in litigation with NCMC with regard to these identical types of claims for over 7 years, since February 12, 2013.  There is *not* one factual allegation which Aetna and its counsel do not already know.

23

*Futility Of Administrative Remedies:*

51.     Aetna argues that NCMC may not bring its ERISA claims because NCMC has not shown that it has failed to exhaust administrative remedies.  (Dkt. 298 p.10)  That is the basis for a dispositive motion or for trial. No evidence has been submitted for the Court to consider this factual issue. Still, *nothing* in the text of ERISA requires that the doctrine of exhaustion of administrative remedies be applied in ERISA cases.  See, *Amato v. Bernard*, 618 F.2d 559, 566 (9th Cir. 1980) (noting that "the text of ERISA nowhere mentions the exhaustion doctrine"). Rather, "application of the administrative exhaustion requirement in an ERISA case is committed to the discretion of the district court."  *Dozier v. Sun Life Assur. Co.,* 466 F.3d 532, 534 (6th Cir. 2006); *Zephyr Aviation, L.L.C. v. Dailey,* 2001 WL 332822, *2 (5th Cir. Apr. 4, 2001) (Where Congress has not clearly required exhaustion, "sound judicial discretion governs."). At this early stage of the case, Aetna is attempting to persuade the Court to dispositively rule on the exhaustion issue *prior to* hearing one *iota* of evidence which it cannot do.

52.     Besides exercising their discretion, courts have recognized that "exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought."  *Davis v. AIG Life Ins.,* 945 F. Supp. 961, 967 (S.D. Miss. 1995), quoting *Hessbrook v. Lennon*, 777 F.2d 999, 1003 (5th Cir. 1985). Foremost among these exceptions, courts have held that a plaintiff is excused from exhausting administrative procedures under ERISA if it would be futile to do so.  See, *Berger v. Edgewater Steel Co.,* 911 F.2d 911, 916 (3d Cir. 1990) ("[C]ourts have recognized an exception" to the doctrine of exhaustion of administrative remedies "when resort to the administrative process would be futile").

53.     If and when discovery is completed, NCMC will be excused of any requirement to exhaust internal administrative remedies as being futile, assuming that such arguments will be contained in a dispositive motion which they are not at this point (Dkt. 294-3 ¶ 62) or presented at trial. *Berger v. Edgewater Steel Co.,* 911 F.2d 911, 916 (3d Cir. 1990) ("[C]ourts have recognized an exception" to the doctrine of exhaustion of administrative remedies "when resort to the administrative process would be futile"). Just as in this case, at issue in *Bernstein* was a defendant's calculation of the dollar amount of benefits due under an ERISA plan which the plaintiff beneficiary alleged was incorrect. *Bernstein v. Citigroup Inc.,* No. 3:06-CV-209-M, 2006 U.S. Dist. LEXIS 54712 *1-*2 (N.D. Tex. July 5, 2006).  Just as in this case, the plaintiff in *Bernstein* had "attempted, without success, to obtain plan documents, calculations, and correspondence." *Id.* The defendant in *Bernstein* argued that the plaintiff's ERISA complaint should be dismissed due to failure to exhaust administrative remedies.  Applying the exhaustion doctrine's well-recognized futility exception, the court in *Bernstein* rejected that argument, reasoning as follows:

> Until [the plaintiff] could obtain plan documents describing what remedies the plan made available and documenting the reasons that his claim had been denied, he was refused meaningful access to those procedures. … When a plan administrator in control of the available review procedures denies a claimant meaningful access to those procedures, the district court has discretion not to require exhaustion.

*Id*. at *6-*7, quoting *Curry v. Contract Fabricators Inc. Profit Sharing Plan,* 891 F.2d 842, 844 (11th Cir. 1990), *abrogated on other grounds*, *Murphy v. Reliance Standard Life Ins. Co.,* 247 F.3d 1313, 1315 (11th Cir. 2001); *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 403 (7th Cir. 1996).

54.     As in *Bernstein* and in this case, the futility exception will excuse NCMC's  not having exhausted administrative remedies, assuming that even occurred, because NCMC cannot

have meaningful access to such remedies *without* access to the information and data that Aetna possesses concerning Aetna's determinations of the amounts that were paid on the insurance claims in question.  Again, Aetna is attempting to have this Court dispositively rule on the merits of NCMC's counterclaims at the early stage of a motion for leave to file an Amended Counter-Complaint, which *cannot* be accomplished.

55.     The futility of any attempt by NCMC to resort to administrative remedies is further demonstrated by the hostility and bias of Aetna toward NCMC. (Dkt. 294-3 ¶ 1,9)  Taking the fact asserted in the Amended Counter-Complaint as true, which this Court is compelled to do, it is certain Aetna would have denied NCMC's claims on appeal, *Helscher-Strauss v. Sara Lee Corp.,* CIV A. 06-1627, 2006 WL 2135351, at *4 (E.D. La. July 28, 2006) noting a denial of benefits from a high-ranking officer of the plan sponsor might be sufficient to establish futility, with a showing of bias or hostility within the benefits committee).  But, this is a decision for another day, either during the dispositive stage of this case or at trial.

## **ALTERNATIVE CLAIMS UNDER ERISA 502(c):**

56.     NCMC has stated a plausible cause of action against Aetna under ERISA § 502(c), 29 U.S.C. § 1132(c).  ERISA § 502(c) provides for civil penalties against "[a]ny administrator" who fails to supply to a beneficiary (such as NCMC) requested information that certain sections of ERISA require the administrator to provide.  29 U.S.C. § 1132(c).  Aetna attempts to argue that it is merely the "claims administrator" and not the "plan administrator" of the ERISA plans at issue which would be a disputed question of fact that cannot be decided on a Motion to Dismiss under Rule 12(b)(6)—thus, it is an improper consideration in determining the Motion for Leave to

Amend.  Thus, taking the facts as true that Aetna is the plan administrator according to ERISA §

502(c), NCMC has stated adequate grounds for relief under 502(c).

<u>**BREACH OF CONTRACT AS TO NON-ERISA PLANS**</u>

57.     NCMC has provided sufficient facts to state a plausible claim against NCMC for

breach of contract. The elements of a breach of contract claim are (a) the existence of a valid

contract; (b) performance or tendered performance; (c) breach of the contract; and, (d) damages

resulting from the breach.  *Elite Door & Trim, Inc. v. Tapia*, 355 S.W.3d 757, 766 (Tex. App. –

Dallas 2011). It is undisputed that Aetna had a valid contractual agreement to pay (perform)

according to the Plan. (Dkt. 298 p. 12)  NCMC's Amended Counter-Complaint states that "Aetna

breached the express terms of such non-ERISA plans by making payments of benefits to such

patients and/or to NCMC in amounts significantly lower than the amounts required by the terms

of such non-ERISA plans. (Dkt. 294-3 ¶ 76)  Furthermore, the Amended Counter Complaint

provides factual allegations supporting a breach of contract:

      a.    The SIU Manager devised a scheme in conjunction with Aetna employees to have all ER claims at NCMC go through a "*Clinical Review*" wherein all medical records are requested to determine if the service was "for an emergent or not emergent situation" and thereafter, if the circumstance determined that it was an emergent situation, then to deny the claim as being not "medically necessary"  (Dkt. 294-3 ¶ 9(l));

      b.    [Aetna] refus[ed] to pay for substantial medical bills, *e.g.* the replacement of a cranial flap after emergency treatment because interim therapy before the cranial flap could be re-attached occurred at another facility in violation of the terms and conditions of the applicable plans/policies (Dkt. 294-3 ¶ 9(t)); and,

      c.    [Aetna] enter[ed] into unlawful agreements with plan sponsors wherein it "obtains a percentage of Savings earned from the adjudication of claims in amounts as much as ***35%***

27

*to 50% of those Savings*" which establish conflicts-of-interest – Aetna makes what it calls additional "Contingency Fees" from denying claims to physician-owned out-of-network facility providers such as NCMC. (Dkt. 294-3 ¶ 9(h)).

58.     Aetna reliance on *Anderson v. U.S. Dept. of Hous. & Urban Dev.*, 554 F.3d 525, 529 (5th Cir. 2008) is misplaced and does not support its argument that the pleading in "devoid of facts" that "would put Aetna on notice as to what conduct supports the claim. (Dkt. 289 p. 12).  In *Anderson*, the Fifth Circuit held, "the district court abused its discretion by certifying a class *based on claims not pleaded in the complaint*."  *Anderson*, 554 F.3d at 529.  The Fifth Circuit explained that "the complaint does *not* mention the voucher program or reference the defendants' conduct in administering the voucher program. Rather, the claims pleaded in the complaint are based on a totally different course of conduct—Hano's and HUD's actions leading up to demolition…" *Id.* The facts in *Anderson* are *not* analogous to NCMC's stated claim of breach of contract which is supported by factual allegations as explained above.

59.     Finally, it has already been judicially determined in *Aetna I* that NCMC may bring these types of breach of contract claims. (Aetna I, Day10 Jury Trial. Dkt. 549 pp. 4-8)

## CLAIM FOR UNJUST ENRICHMENT

60.     Aetna again misconstrues case law precedent in citing *Johnson v. Wells Fargo Bank, NA,* 999 F.Supp. 2d 919, 929 (N.D. Tex. 2014), a district court case to support the erroneous argument that NCMC's unjust enrichment claims fail as a matter of law because  NCMC's patients and Aetna have a contract; as such, NCMC cannot sue Aetna for unfair and unconscionable methods, acts and/or practices through which Aetna wrongfully retained monies that rightfully and equitably should have been paid to NCMC. (Dkt. 298, p. 12)  However, *Johnson* is actually citing to *Burlington* which states, "[T]he unjust enrichment doctrine applies the principles of restitution

28

to disputes which for one reason or another are not governed by a contract *between the contending parties*." *Burlington N. R.R. Co. v. Sw. Elec. Power Co.,* 925 S.W.2d 92, 97 (Tex.App.-Texarkana 1996), aff'd, 250 Ark. 557, 466 S.W.2d 467 (Tex. 1998); *Johnson v. Wells Fargo Bank, NA,* 999 F.Supp. 2d 919, 929 (N.D. Tex. 2014).  Moreover, *Johnson* relied on numerous cases in which the doctrine of unjust enrichment did not apply—and in each cited case the doctrine of unjust enrichment did not apply because of an existing contract *between the  parties named in the lawsuit.* *Coghlan v. Wellcraft Marine Corp.,* 240 F.3d 449, 454 (5th Cir.2001); *Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 685 (Tex. 2000). Thus, NCMC has stated a plausible claim for unjust enrichment because Aetna and NCMC (the contending parties) do not have a contract for the claims at issues with the exception of the instances wherein Aetna agreed for NCMC to treat particular patients for particular matters and later reneged on those agreement. See ¶ 58, *supra*.

61.    However, even if a contract did exist between Aetna and NCMC—which is does not—underpayments/overpayments "under a valid contract may give rise to a claim for restitution or unjust enrichment."  *Southwestern Elec. Power Co. v. Burlington Northern Railroad Co.,* 966 S.W.2d 467, 469-70(Tex. 1998) (citing *Staats v. Miller,* 150 Tex. 581, 243 S.W.2d 686, 687-88 (1951) (allowing restitution for excess money held by defendant after selling plaintiffs' cotton harvester pursuant to oral contract); *Bowers v. Missouri, Kan. & Tex. Ry. Co.*, 241 S.W. 509, 510-11 (Tex.Civ.App. -- Texarkana 1922, no writ) (allowing restitution for freight charges paid in excess of rates specified in shipping contract); *Gulf Oil Corp. v. Lone Star Producing Co.*, 322 F.2d 28, 31-33 (5th Cir. 1963) (holding that plaintiff could recover money mistakenly paid in excess of the contract price); *Natural Gas Pipeline Co. v. Harrington*, 246 F.2d 915, 921 (5th Cir. 1957) (holding that gas company was entitled to restitution of difference between contract rate and

price paid under invalid rate order set by regulatory board). Thus, NCMC has stated a plausible claim of relief for unjust enrichment.

## **CONCLUSION**

62.     Based upon the foregoing, the Court should grant NCMC's Motion for Leave.

**WHEREFORE PREMISES CONSIDERED**, NCMC prays that this Court grant their Motion for Leave to File Amended Counterclaim dated October 17, 2019, and for such other further relief, at law and/or in equity to which they may be justly entitled to receive.

Respectfully submitted,

By:     */s/ J. Douglas Sutter*
        J. DOUGLAS SUTTER
        Federal ID No. 3791
        State Bar No. 19525500
        dsutter@ksklawyers.com

**ATTORNEY FOR DEFENDANTS ROBERT A. BEHAR, M.D., NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY, LTD. AND NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY GP, LLC**

**OF COUNSEL:**

**KELLY, SUTTER & KENDRICK, P.C.**
3050 Post Oak Blvd., Suite 200
Houston, TX 77056
(713) 595-6000 – Telephone
(713) 595-6001 – Facsimile

**NEIL PRUPIS**
**WILSON, ELSER MOSKOWITZ EDELMAN & DICKER LLP**
200 Campus Drive
Florham Park, New Jersey 07932
(973) 735-5775 – Telephone
(973) 624-0808 – Facsimile
neil.prupis@wilsonelser.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of November, 2019, a true and correct copy of the foregoing document was provided to opposing counsel via electronic mail and the Court's ECF filing system as follows:

John B. Shely
Jeffrey D. Migit
HUNTON ANDREWS KURTH, LLP
600 Travis, Ste. 4200
Houston, Texas 77002
jshely@HuntonAK.com
jmigit@HuntonAK.com

*/s/J. Douglas Sutter*
**J. DOUGLAS SUTTER**
